### ORTON AND STEINBRENNER COMPANY *v.* MILTONBERGER.

[No. 10,520.    Filed December 17, 1920.]

1. MASTER AND SERVANT.—*Action for Bonus.*—*Complaint.*—*Sufficiency.*—In an employer's action against the master to recover a bonus, a complaint alleging that plaintiff entered defendant's employment, with an agreement that he was to receive $2 per day, and that he should participate in the distribution of a bonus, the amount of which was to be determined from the net earnings of the company and apportioned among its employes in proportion to the wages received by each, and which further averred the total wages drawn by plaintiff, and the percentage of the wages of each employe distributed as a bonus, alleges the amount of bonus to which plaintiff was entitled with sufficient certainty to make it good as against demurrer.    p. 463.

2. APPEAL.—*Review.*—*Harmless Error.*—*Overruling Demurrer to Complaint.*—In an employe's action against the master to recover a bonus, error, if any, in overruling a demurrer to the complaint on the ground that the amount of the bonus was not alleged with sufficient certainty was harmless; where the

special findings show a clear right of recovery, and that the conclusions of law are correct.　p. 464.

3.　MASTER AND SERVANT.—*Master's Voluntary Sharing of Profits with Employes.—Employe's Right to Recover.*—Where a company posted a notice in its factory that it would share its profits with its employes, one who entered the company's employment after its superintendent had informed him of the company's plan of distributing profits to employes, and who accepted a daily wage much less than the average wage for similar work in the community in anticipation of sharing in the profits, was entitled to recover his proportionate share of the bonus under the method of computation set forth in the posted notice.　p. 468.

4.　MASTER AND SERVANT.—*Payment of Bonus.— Conditions.— Compliance by Employe.*—In an action against the master by an employe to recover his share of a bonus, *held* that the employe had substantially performed the conditions that placed him in the class of employes who were entitled to share in the bonus.　p. 469.

From Huntington Circuit Court; *Nelson G. Hunter,* Special Judge.

Action by Wesley A. Miltonberger against the Orton and Steinbrenner Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Charles R. Haller,* for appellant.
*John Q. Cline* and *Claude Cline,* for appellee.

NICHOLS, J.—This was an action to recover a bonus brought by appellee against appellant.

To the complaint appellant filed its demurrer for want of facts, with memorandum, so far as presented in this court, to the effect that the amount of the bonus was uncertain, and not stated, and that the contract was therefore unenforceable for uncertainty. Appellant says, in discussing this alleged error, that "to say to one about to enter your employ, 'We will pay you two dollars per day and then there is a bonus' is not such an offer of payment of a bonus as could be impliedly accepted." The complaint, however, that is

464    APPELLATE COURT OF INDIANA,

Orton and Steinbrenner Co. *v.* Miltonberger—74 Ind. App. 462.

set out in appellant's brief has a more specific averment than the above interpretation thereof. It is therein averred that appellee entered appellant's employ "pursuant to a mutual· agreement and understanding by which the plaintiff was to receive the sum of $2 per day for each day's labor that he might perform for said defendant corporation, and with the further agreement, both express and implied, that the plaintiff should participate in the distribution of a bonus at the end of the year 1917, the amount of said bonus to be determined from the amount of net earnings of said company and apportioned among the employes of said defendant corporation in proportion to the amount of wages received by each employe." The complaint then avers that appellee, working at $2 per day, drew wages in the sum of $278.50, and that at the end of the year a bonus of 156 per cent. of the amount of wages each employe drew was paid. We think the complaint was sufficient to withstand demurrer, but, even if it were not, with the conclusion we have reached, as hereinafter appears, that the special findings show a clear right of recovery, and that the conclusions of law are correct, the error would be harmless. *Shank* v. *Trustees, etc.* (1911), 47 Ind. App. 331, 88 N. E. 85, 93 N. E. 452.

It appears by the special findings that appellee, on March 12, 1917, entered the employ of appellant, a manufacturing corporation, with an express agreement and understanding that wages were to be paid to appellee at the rate of twenty cents per hour, with further conditions hereinafter set out. On January 13, 1917, appellant caused the following notice to be posted in at least three places in the factory:

"During the year 1917, the Orton-Steinbrenner Company will divide equally with its employees all excess profits remaining after 7% dividend on the total capital invested. The 7% dividend will be

based on the inventory of Dec. 31, 1916, and will be calculated on the preferred stock which may be sold throughout 1917, the common stock (all of which is now sold), and the surplus as shown in the inventory. Half the remaining profits will be divided among the employees of the company, the share of each being determined as follows: The total wages of each employee in the service of the company on January 13, 1917, shall be multiplied by 1.2. The total wages of each employee beginning service prior to July 1, 1917, but not in the employ Jan. 13, 1917, shall be multiplied by 1.1. The total wages of each employee beginning service on or after July 1, 1917, shall be multiplied by 1.

"Each employee shall then be allotted a share of the available employees' part of the profit in the direct proportion that his product as above determined bears to total payroll increased as above provided he has met the following conditions:

"1. He must have worked 600 hours actual time for this company during 1917.

"2. He must work at least two weeks after resigning his position, if desired by those in charge.

"3. If not in the employ of the company on Dec. 31, 1917, he must have sent the company's office, either at Huntington or Chicago, the full address for forwarding his share so as to reach the office between December 25th and January 5th.

"4. He must have been in regular employ of the company and not temporarily employed for some specific job.

"The above plan for division of profits is purely voluntary on the part of the company and it is in no sense a contract. The fact that any employee is receiving the benefits of this plan shall not deprive the company of the right at any time to discharge such employee and thereby terminate his participation under the plan, nor shall any employee acquire any right thereunder to demand an accounting by the company concerning its business or profits.

"Distribution of profits will be made between January 5th and January 25, 1918. Should the employees' share of the profits amount to more than 25 per cent. of the yearly payroll, the company shall,

466    APPELLATE COURT OF INDIANA,

Orton and Steinbrenner Co. v. Miltonberger—74 Ind. App. 462.

however, have the option of withholding payment of the balance for not to exceed six months, paying interest at the rate of 7% per annum from January 25th.

"Orton & Steinbrenner Company."

At the time of employment of appellee, appellant's superintendent, who had charge of the employment of labor, stated to appellee that it was the policy of the company to share the profits of the company with its employes. It was a matter of common knowledge and it was known to appellee that appellant had paid a bonus of approximately fifty per cent. for the year 1916, the same being paid in January, 1917. From March 12, 1917, to August 31, 1917, appellee worked 1,328 hours, for appellant. Appellee asked and was granted leave of absence from his work from August 7 to August 20, 1917, at the end of which time he returned to work and worked until August 31, 1917, when appellee again asked for leave of absence and was granted two weeks. At this time appellee stated to appellant's superintendent that he did not wish to do anything that would interfere with his sharing in the distribution as set forth under the terms of the notice. It was the custom of appellant to pay its employes at the end of each two weeks period, and on September 8, 1917, appellee appeared at appellant's office for his pay for the period ending August 31, 1917, when the timekeeper requested that appellee deliver up certain brass tool checks, which appellee declined to do, stating that he was off duty on leave of absence. Thereupon appellant's superintendent informed such timekeeper of such fact, and payment was made to appellee, and he retained his keys. On or about September 10, 1917, appellee appeared at appellant's plant ready to take up his work, but was informed by the night foreman under whom he was working that another employe was then working in the

stead of appellee, and that appellee could complete the work he had undertaken and then report for duty. There were no fixed rules for leave of absence, and all individual cases were handled by the superintendent and night foreman in such way as might be determined by them, respectively, in each case. Appellee, having completed his work, reported to the night foreman, December 10, 1917, ready for work, but was informed that he would be called when needed; but thereafter no call was made for him by appellant or its superintendent or its night foreman to return to work. Appellant did not resign his position, nor was he requested by appellant to work at least two weeks after any given time, nor was appellee informed by appellant that he was discharged. On December 31, 1917, the full address of appellee was on file on a card-index system in the office of appellant, and it was the same as when appellee entered the employ of appellant. Appellee was in the regular employ of appellant between the days above set forth, and was not temporarily employed for some specific job, and his employment was common labor for appellant, the scale of wages for which outside of appellant's plant was thirty to thirty-five cents an hour. No officer or agent of appellant called appellee's attention to the said notice, nor did appellee know that the same was posted, nor did he have knowledge of the terms and conditions thereof, other than the general knowledge acquired from appellant's agents and others to the effect that it was the policy of the company to divide equally the excess profits, as set forth in the notice.

During the period that appellee worked for appellant, his wages amounted to $275.50. In January, 1918, appellant divided its excess profits among its employes under the terms and plan of said notice, which excess profits amounted to one hundred and forty-seven per

cent. of the wages drawn during the year 1917, and that no portion thereof was declared due to or set aside for appellee. On these findings, the court stated conclusions of law in favor of appellee, and that he was entitled to recover of appellant $404.98 and costs. Judgment was rendered for said amount and costs in favor of appellee against appellant. Appellant's motion for a new trial was overruled..

That the element of bonus was an inducement to appellee to accept employment with appellant is corroborated by the well-known fact, a fact which appears by the evidence, that the wages for any kind of labor at the time of appellee's employment were much higher than $2 per day. It is true that appellant's superintendent, at the time of the employment, did not go into the details of the method to be used in determining the amount of the bonus, but the assurance by the superintendent of a bonus to be paid induced an acceptance of employment, and further assurance by the night foreman to the same effect induced a continuance in service. When the superintendent promised a bonus, he must be understood to have meant a bonus in such amount as the method adopted by appellant for its computation would produce, and appellee, by entering the service and performing the labor for which he was employed, accepted such terms. There is no challenge of appellant's method of determining the amount of the bonus, but simply that under that method appellee should receive his just proportion.

In the case of *Zwolanek* v. *Baker Mfg. Co.* (1912), 150 Wis. 517, 137 N. W. 769, 44 L. R. A. (N. S.) 1214, Ann. Cas. 1914A 793, the company had adopted a profit-sharing by-law, and there was no evidence that the employe relied upon it at the time of his employment, though he did inform his employer that a raise in wages was satisfactory, provided he was allowed to

participate in the profits of the company, but it was held that such employe was entitled to recover his proportionate share of the profits. The court said that it regarded the by-law as an offer of reward for continuous service. So we may say of the bonus that was held out as an inducement to employment in this case, and, when its offer is accepted by performance of the services, the company is bound by its offer.

4. While appellee was absent a part of the time, it appears that he had leave of absence, that he did not resign, nor was he discharged, and that he substantially performed the conditions that placed him in the class of employes that were entitled to share in the profits.

The judgment is affirmed.