MONTGOMERY WARD & CO., INC. v. GUIGNET.

[No. 16,874. Filed December 22, 1942. Rehearing denied February 1, 1943.]

*John A. Barr, L. E. Oliphant,* and *Francis H. Monek,* all of Chicago, Illinois, and *Ora L. Wildermuth,* of Gary, for appellant.

*Thorpe, Bamber & Harrison,* of Hammond, for appellee.

STEVENSON, J.—The appellee on May 5, 1938, brought this action against the appellant to recover damages. His complaint was in two paragraphs. The first paragraph of complaint alleged generally that the appellant was a corporation authorized to do business in Indiana, and was engaged in the operation of many retail stores for the sale of merchandise. The complaint alleged that for the purpose of stimulating the activities of

store managers employed by the appellant, it had adopted and maintained a bonus plan in favor of such store managers, which provided that they should receive at the end of each year, in addition to their stipulated salary, a bonus in the amount of eight per cent of the net profit of the store so operated by such manager.

The appellee alleged that on the 29th day of February, 1936, he was employed as store manager for appellant store in Jackson, Michigan. Under his management for the year 1936, such store showed a net profit of $21,000.00, and for 1937, a net profit of $25,000.00.

The complaint further alleged that on the 30th day of October, 1937, and before the end of the fiscal year of 1937, the appellant wrongfully and without cause or reason terminated the appellee's employment, and refused to pay him his bonus for the year 1937. He accordingly prayed judgment for $2,000.00.

The second paragraph of the complaint alleged substantially the same facts but contained the additional averment that it was mutually agreed between the appellee and the appellant at the time he was employed that he would be permanently employed so long as he well and faithfully performed all of his duties as store manager. The appellee alleged that this contract of permanent employment has been wrongfully breached, for which breach he prays damages in the sum of $50,000.00.

To this complaint, the appellant filed an answer in two paragraphs. The first paragraph was in general denial, and the second paragraph was by way of set-off or counterclaim. This paragraph alleged that the appellee was indebted to the appellant for $199.10 for merchandise purchased by him, and for which amount they prayed judgment.

Replies of general denial to this affirmative paragraph of answer closed the issues. The case was submitted to a jury for trial, and at the close of the evidence the appellant moved for a directed verdict. This motion was overruled, and the jury, after being instructed by the court, returned a verdict for the appellee on paragraph one of his complaint and assessed his damages in the sum of $1,734.00. The jury also returned a verdict on paragraph two of the appellee's complaint, and assessed his damages in the sum of $2,412.00. The court instructed the jury to return a verdict for the appellant on its counterclaim in the sum of $199.10, which action is unchallenged.

A motion for new trial was filed by the appellant and overruled, and this appeal has been perfected. The error assigned on appeal is: The court erred in overruling the appellant's motion for a new trial.

Under this assignment of error, the appellant contends that the verdict of the jury is not sustained by sufficient evidence.

In support of this assignment, the appellant contends that the only right of the appellee to recover a bonus is based upon the provisions of the appellant's store operations manual, which was the only bonus plan in operation during the period of appellee's employment. The appellant accordingly contends that under the provisions of this manual the appellee cannot recover a bonus in the event his employment is terminated during the fiscal year. The provisions of the store operations manual, as offered in evidence, disclosed the following clauses:

" 'c.  *No rights to a fixed or definite term of employment* are conferred by the bonus plan. The company reserves the right to terminate employment without advance notice, whether such termination be for cause or otherwise.

"'d. *If the Manager's services are terminated* either by the company or by the manager, the manager forfeits his right to a bonus for the entire year in which his services are terminated.

"'k. *No bonus arrangements other than the foregoing* shall be binding on the company unless in writing and bearing written approval of an officer of the company.'"

As a part of the appellee's evidence in support of his case in chief, the parties then entered into the following stipulation:

"'It is stipulated and agreed between the counsel that the defendant has a bonus plan as set out in its Store Operating Manual and that, according to said plan, the bonus as applicable to the Jackson, Michigan, store would be figured on the basis of 8% of 85% of the net profit of the store for each fiscal year; and if the plaintiff is entitled to a bonus in this case, the bonus would be computed in accordance with the above percentages.'"

In the light of the provisions of this operations manual, and in the light of the stipulation, the question presented to us is whether or not there is any evidence which warranted the jury in finding that the appellee was entitled to a bonus for the fiscal year 1937 since he was discharged October 30th of that year.

The appellee contends that this bonus plan was, in legal effect, a contract to pay additional compensation, and not a gratuity, and is, therefore, enforceable as a part of the wages earned when the employee is wrongfully discharged. Conceding for the sake of argument that the provisions of the plan, as adopted by the appellant for the payment of a bonus, amount to additional compensation, yet the right of the appellee to recover such bonus must be determined from a study of all the provisions of the adopted plan. The terms of this plan were known to the appellee during

the course of his employment, and when the appellant's employing agent discussed the matter of the payment of a bonus, we must assume that it was the bonus plan as set forth in the store operations manual.

As was said by this court in the case of *Orton and Steinbrenner Co.* v. *Miltonberger* (1920), 74 Ind. App. 462, 468, 129 N. E. 47:

> "When the superintendent promised a bonus, he must be understood to have meant a bonus in such amount as the method adopted by appellant for its computation would produce, and appellee, by entering the service and performing the labor for which he was employed, accepted such terms. There is no challenge of appellant's method of determining the amount of the bonus, but simply that under that method appellee should receive his just proportion."

Having become bound by the provisions governing the payment of the bonus, the appellee must meet the conditions stipulated in this plan before he can share in its benefits. One of these conditions required that the manager should continue in the service of the employer for the entire year in order to participate in the profits of the business. In other words, the right of the manager to a bonus was conditioned upon his continuous service for the entire year in which the profits of the business were computed. In our opinion, this condition was not unconscionable in its nature and was not contrary to public policy.

The case at bar is similar in many respects to the case of the *National Manufacture & Stores Corp.* v. *Whitman* (1938), Circuit Court of Appeals, Fourth Circuit, 93 F. (2d) 829, 831. In this case, appellee sued to recover a manager's bonus which he claimed to be due him as manager of appellant's store at Spartanburg, S. C. In this case, as in the case at bar, store managers were given a bonus provided they remained in

the employment of the corporation for the full year, beginning June 1st. The appellee left their employment without finishing the year's work, and sought to recover his proportionate share of the bonus. The court said:

"The plaintiff's original contract of employment with the defendant contained the agreements that either party could terminate the contract at will. In the absence of fraud or bad faith such an agreement is binding. The bonus agreement relied upon by the plaintiff as a basis for recovery must be read as a whole and, when so read, clearly shows that the bonus offer was to be effective only in the event the plaintiff completed the year as manager of the Spartanburg store and in the absence of bad faith or fraud this condition in the agreement was a valid one."

As was said by the Supreme Court of Michigan, in the case of *Muir* v. *Leonard Refrigerator Co.* (1934), 269 Mich. 406, 408, 257 N. W. 723:

"It is difficult for plaintiff to extricate himself from the conditions of employment which he has voluntarily assumed, for even though the forfeiture provisions seem harsh, we can only interpret the contract which the parties have made. . . . Where a contract is not ambiguous, it must be construed according to the ordinary meaning of the words used."

A similar contract was before the Supreme Court of Colorado, in the case of *Fontius Shoe Co.* v. *Lamberton* (1925), 78 Colo. 250, 253, 241 P. 542. In this case the contract of employment contained a provision of forfeiture of any bonus otherwise payable in the event the employee was discharged. The trial court found that the employee was wrongfully discharged. The Supreme Court, in passing upon the employee's right to a bonus, even though wrongfully discharged, said:

"But assuming that the finding is correct, we are still unable to hold that plaintiff is entitled to re-

cover. The defendant company seems to have incorporated into the contract language which permits such conduct on its part, and also to deprive an employee of his bonus in the event of such a discharge.

". . . So far as the bonus is concerned, the contract in the instant case is nothing more than an announcement of the policy of defendant. Its forfeiture provisions seem harsh, but we can act only upon the contract which the parties have made."

The payment of the bonus to the appellee was a part of his contract of employment, and whether the same be considered a gratuity or additional compensation, it was payable only on the conditions stipulated in the plan. When the contracting parties have agreed upon the conditions of their contract, they are bound by its terms, and there is no evidence in the record sufficient to establish any modification or waiver of this agreement.

The rule is well stated in Labatt's Master and Servant, Second Edition, Vol. 2, at p. 1323:

"In some contracts it is stipulated either absolutely or conditionally, that a sum designated as a gift, gratuity, or bonus shall be payable at a certain date. Such a sum is in effect a part of the stipulated remuneration; and when the specified period has expired, the right to recover it at once accrues to the servant, provided the agreement is valid, and the specified condition, if there be one, has been fulfilled."

We are not unmindful of the authorities which hold that one who is promised a bonus for continuous work for a year, in addition to regular wages, is entitled to recover a proportionate part of the bonus promised upon wrongful discharge during the year. See *Roberts v. Mays Mills* (1922), 184 N. C. 406, 114 S. E. 530, 28 A. L. R. 338.

It will be noted, however, from a study of these authorities that recovery of a proportionate part of the bonus promised is permitted generally in those cases growing out of the wrongful discharge of the employee during the specified term, or in those cases where the bonus is offered by the employer and accepted by the employee as an added inducement for continuous service. See *Zwolanek* v. *Baker Manufacturing Co.* (1912), 150 Wis. 517, 137 N. W. 769. We have been cited to no authority which permits a recovery of a proportionate amount of the promised bonus where the discharge of the employee was justifiable or for cause.

In the case before us it will be noted that the appellant was given the right to discharge the appellee "without advance notice, whether such termination be for cause or otherwise." In the application for employment which the appellee signed, it was stipulated that the employment sought might be terminated at any time without notice, either by the appellee or by the appellant. The contract of employment, therefore, conferred upon the appellant the right to terminate appellee's employment at any time with or without cause. Such contracts are not contrary to public policy and are binding upon the parties. *Sinclair Refining Co.* v. *McCullom* (1940), 107 Ind. App. 356, 24 N. E. (2d) 784.

It is our opinion, therefore, that the appellee's right to a bonus from his employer did not arise until he had met the specified condition upon which its payment was conditioned, namely, continuance in the service as manager for the entire year 1937. It is our further opinion that under the terms of the employment contract the discharge of the appellee by the appellant on October 30, 1937 was not wrongful, for

the 'contract specifically authorized the termination of the employment without notice and without cause. There was no evidence indicating fraud or bad faith on the part of the appellant in this transaction.

There was accordingly no evidence sufficient to warrant the court in submitting to the jury the issues presented by the appellee's first paragraph of complaint. It follows, therefore, that there was no evidence to sustain the finding of the jury in appellee's favor on this first paragraph

The appellant contends further that the evidence is insufficient to support the verdict of the jury on the second paragraph of complaint. This paragraph of complaint sought to recover damages for an alleged breach of contract of permanent employment of the appellee by the appellant. The only evidence offered in support of this paragraph of complaint is the testimony of the appellee to the effect that at the time he entered into the employment, he informed the appellant's manager that he was seeking permanent employment, and would not be interested in a position for only one or two years. The appellee testified that on this occasion the appellant's employing agent assured him that his employment with them would require a course of training to fit him for the duties as store manager, which would cover a period of possibly five years, and that the company would not be interested in training a man for five years to discharge the duties as their manager unless they considered the employment to be permanent in nature. It was pursuant to this conversation that the appellee entered the appellant's service working as salesman in various departments, in various stores, throughout the middle west. This period of training was from April, 1933 until February, 1936, at which

time he was appointed manager of the Jackson, Michigan, store.

We think this evidence is insufficient to establish a contract for permanent employment. "The rule seems to be well settled, by the great weight of authority, that where, by the terms of a contract, whether it be written or verbal, the contract is one of employment, and by its terms, the tenure of service cannot be determined, such contract is one at will, and may be terminated at any time, at the election of either party." *Speeder Cycle Co. v. Teeter* (1897), 18 Ind. App. 474, 477, 48 N. E. 595.

This rule is further announced in 35 Am. Jur., Master and Servant, § 24, p. 460, in the following language:

"With respect to the duration of a contract to give a person permanent employment, the general rule is that in the absence of some further express or implied stipulation as to the duration of the employment or of a good consideration in addition to the services contracted to be rendered, the employment is no more than an indefinite general hiring terminable at the will of either party."

The evidence in this case discloses no consideration passing from the appellee to the appellant to support a life contract of employment. On the other hand, the application for employment signed by the appellee contains the express stipulation that the employment sought might be terminated at any time, without notice by either party, and the same provision appears in the store operations manual, above quoted.

It is our opinion that this evidence, in the light of these rules, is insufficient to show a *prima facie* case of breach of a contract for permanent employment.

The appellee suggests in oral argument and in brief

that the evidence does disclose facts sufficient to constitute a breach of a contract of employment for a period of five years, and suggests that this is obviously the basis upon which the jury reached a verdict in appellee's favor on the second paragraph of appellee's complaint. The appellee suggests that the complaint should be deemed amended in this instance to conform to the evidence, and to allege a breach of a contract to employ the appellee for a period of five years. Conceding, but not deciding, that this might be done, the appellee's position would not be improved. If we should concede that the evidence is sufficient to establish a contract to employ the appellee for a period of five years, such contract, not having been in writing, is a contract which cannot be performed within one year, and is, therefore, within the statute of frauds. § 33-101, Burns' 1933. See also *Maglaris* v. *Claude Neon Federal Co., Inc.* (1935), 101 Ind. App. 156, 198 N. E. 462; *Holcomb & Hoke Mfg. Co.* v. *Younge* (1937), 103 Ind. App. 439, 8 N. E. (2d) 426.

The fact that this contract was partially performed by the appellee does not remove it from the operation of the statute.

"Part performance of a contract for personal services that can not be fully performed by either party within a year does not take it out of the statute of frauds." *Butler University* v. *Weaver* (1933), 97 Ind. App. 151, 156, 180 N. E. 875.

It follows, therefore, that the verdict of the jury in appellee's favor on the second paragraph of complaint is not supported by the evidence. The court was accordingly in error in overruling the appellant's motion

for a new trial. For this error, the judgment of the trial court is reversed, and a new trial is ordered.

Judgment reversed.

NOTE.—Reported in 45 N. E. (2d) 337.