Kevin J. FLYNN, Plaintiff-Appellant,

v.

KOPPERS COMPANY, INC., Defendant-Appellee.

No. 77–1315.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1977.

Decided Dec. 15, 1977.

Flynn was employed by Koppers Company in 1970 as a sales representative on a salaried basis and continued in that capacity until he voluntarily resigned on October 31, 1973. On January 1, 1973, prior to resignation, Flynn became a participant in the Koppers Company Incentive Plan for the calendar year, which provided for additional earnings to him based upon the extent to which he exceeded assigned quotas of sales of the company's products. The trial court in view of its judgment finding for Koppers Company on the liability issue did not reach the issue of damages. Plaintiff alleged that during 1973 up until the time of his resignation he exceeded the quotas for all products and was therefore entitled to the extra compensation under the incentive plan. Koppers Company claimed that Flynn, having terminated his employment before the end of 1973, was therefore not entitled to any extra compensation for his excess sales for 1973. None was paid. The parties agree that Flynn's employment with the company was for no specified length of time.

The incentive plan was contained in a 1973 Koppers Company letter and attachments. This is the critical contract paragraph:

> This plan is effective for the period commencing January 1, 1973 and ending December 31, 1973. Amount earned under this Plan will become payable as soon as possible after the Company's books have been closed for the year 1973. If you do not remain in your present position throughout the year, your incentive arrangement may be adjusted or terminated.

In other provisions the plan provided in part that "You begin to earn incentive compensation when your sales, as defined, reach 60% of your quota." "There is no 'cut-out' point," and "there are no penalties."

Flynn also claimed that prior to his termination he made inquiry to one of the Koppers Company's officers about the ef-

Joseph T. Helling, South Bend, Ind., for plaintiff-appellant.

John R. Obenchain, Robert W. Mysliwiec, South Bend, Ind., for defendant-appellee.

Before CASTLE, Senior Circuit Judge, WOOD, Circuit Judge, and WYZANSKI, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff, Kevin J. Flynn, appeals the adverse allowance of summary judgment, both upon the grounds that certain findings of fact by the trial court were contrary to the record or are material facts in dispute, and further that the court erred in its conclusions of law in the interpretation of a written contract between plaintiff and defendant.

* The Honorable Charles E. Wyzanski, Jr., Senior District Judge of the District of Massachusetts, is sitting by designation.

fect, if any, his leaving Koppers would have upon the extra compensation he had earned up to that time. In his deposition, Flynn admitted that he was not told specifically and directly that he would receive his earned incentive compensation but was informed by the officer that the company "had never not paid their [incentive compensation] in the past and did not see why they would not pay it now." The company denies that Flynn was told he could receive the incentive compensation for 1973. The trial court found with the company on this factual issue.

First, we believe that the response of Flynn in his deposition concerning what he was told by an officer of the company as to the effect of termination upon his incentive compensation at the least strongly implied that the compensation would be paid. If the company may have misled Flynn as to the effect his contemplated termination would have upon his already earned incentive compensation under the plan, which it denies, an issue of material fact was created to be resolved at trial. That there is no genuine issue of material fact cannot be clearly shown to support the allowance of summary judgment. *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972).

Interpreting the contract, the company argues that in all factually similar cases it has been uniformly held that an employer's promise to pay a bonus in consideration of the employee remaining in the employment and rendering service for a specified length of time, although hired for an indefinite period, creates a valid and enforceable contract only if the employee serves the stipulated time. In support of its position the company relies on *Montgomery Ward and Co., Inc. v. Guignet*, 112 Ind.App. 661, 45 N.E.2d 337 (1944); *Walker v. American Optical Corp.*, 265 Or. 327, 509 P.2d 439 (1973); *Doberrer v. A. M. Harris Industries, Inc.*, 28 Ohio App.2d 71, 274 N.E.2d 575 (1971); *Mosow v. National Lock Co.*, 119 Ill.App.2d 232, 255 N.E.2d 500 (1971).

*Montgomery Ward and Co., supra,* cannot be read as giving any support to the company's interpretation of the contract as the contracts are in sharp contrast. In that case there was a specific condition in the contract that the employee had to continue in the service of the employer for the entire year in order to participate in the bonus. The bonus payment was part of the contract of employment. In *Walker, supra,* the plan also specifically provided that to receive payment the salesman must be on the payroll at the time of distribution. We note, however, that the court further states that the bonus plan offered by an employer normally becomes binding as a unilateral contract when the employee begins performance of the terms of the proposed plan in the sense that the plan cannot be revoked by the employer unless the plan specifies, as in that case, some particular condition to be met. In *Doberrer, supra,* the provision was also equally clear as the plan specified that in order for any employee to share in the bonus the employee must be working at the end of the company's fiscal year.

The company would have us reform the contract it supplied its employees so that the provision which provides that amounts earned will become payable as soon as possible after the company's books are closed for the year, would read that the employee to be eligible to receive the payment must be on the payroll at the end of the year. The company argues that the company's promise to pay the bonus is in consideration of the employees remaining in the employment and rendering service for the full year. Nowhere does the plan say that. It says instead that it is in recognition of incentive performance in achieving and bettering quotas and recognizes the individual's contribution to the overall performance of the division. Those objectives do not require that an employee employed for an indefinite period work for a definite period in order to exceed the quotas and to benefit the company. The objectives might be accomplished in a day. The company seeks to keep to itself all the benefits its plan generated which were intended to be shared with its employees.

The company would also have us reform its contract provision which provides that if

the employee does not remain in his present position throughout the year, the employee's incentive arrangement may be adjusted or terminated. That provision would then read that if the employee does not remain in the company' employment the entire year, the extra compensation he has already earned to date is forfeited. The term "forfeit" appears nowhere in the plan. Plaintiff cites *Philadelphia, W & B Railway Co. v. Howard*, 54 U.S. (13 Howard) 307, 340, 14 L.Ed. 157 (1851), for the principle that "The law leans strongly against forfeiture, and it is incumbent on the party who seeks to enforce one to show plainly his right to it." We are not aware of any case in the meantime which has improved upon that ancient rule. If the contract was intended to say what the company now argues it says, we believe the company could very easily and clearly have written its contract to reflect that view. The terms of the contracts in the cases the company has cited could have been adopted. Nor is *Mosow, supra*, persuasive support for defendant as we are left to speculate about the actual terms of the contract. It was labeled a "contingent compensation plan" with unfettered discretion in the Board of Directors to pay or not to pay. In that case the employee who was fired received nothing, but neither did those employees who remained. No provision of the present plan even suggests forfeiture or that an employee must remain an employee until the end of the year. To the contrary, the plan provides that the employee begins to earn the extra compensation as soon as the employee exceeds the quota. That could be at any time during the year, and in the present case it was prior to voluntary termination of employment.

The more plausible meaning of the plan's terminology as it stands on this record without the benefit of trial is that an employee, regardless of when he left employment, would not actually receive the bonus he had earned until after the company's books had been closed for the year, but he would receive it then. Further, in the event the employee changed positions, for example, by advancement from salesman to executive or otherwise, so that the incentive plan had no longer any application to him, the arrangement would be terminated; or that the plan could be adjusted if there was some change in the product line of the company to be handled by the employee, or otherwise. At best the contract is ambiguous so that it must be subjected to a determination under the ordinary rules for resolving what the parties intended. We do not believe summary judgment was properly applied to resolve these issues.

REVERSED AND REMANDED.