30 F.3d 136
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Michael John FARNE, Plaintiff-Appellant,
v.
CARRIAGE INDUSTRIES INC., Defendant-Appellee.
 No. 94-1398.
 United States Court of Appeals, Seventh Circuit.
 Argued July 6, 1994.
Decided Aug. 3, 1994.
 
 Before BAUER, COFFEY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Michael John Farne filed this diversity action claiming that his employer Carriage Industries, Inc. (Carriage) owed him a bonus of approximately $20,000 for services rendered.[1] The district court granted Carriage's motion for summary judgment on the ground that Farne was not employed on the day bonus checks were disbursed, which according to Carriage, was a condition precedent to receipt of the bonus. We reverse and remand because Farne established a genuine issue for trial regarding whether Carriage communicated to him its policy of not paying bonuses to individuals who are no longer employed with the company.
 
 I. FACTUAL BACKGROUND
 
 2
 Farne was hired by Carriage, a manufacturer of industrial carpet, in November of 1989. The offer of employment included a salary of $27,000 and the terms were described in a letter which Farne signed. Although the letter did not refer to a bonus, Farne was told that a bonus was available by William Groves, Director of Personnel, during the interview process. Farne was told that the amount of the bonus was dependent on the financial success of the company. Farne learned from management representatives that Carriage's policy was to allocate fifteen percent of its profits, from a fiscal year of July 1 through June 30, to a bonus pool, which it would divide among sales personnel based on their job performance. The checks were disbursed in September. Farne was told that the bonus was guaranteed, however, he had heard that in the past the bonuses had as much as equalled an employee's salary.
 
 
 3
 Farne received a bonus check of $3,000 in September, 1990, and another of $6,000 in September, 1991. On July 13, 1992, he was discharged.[2] In 1992, Carriage's gross profits were $30.7 million. That September, Carriage distributed bonus checks to all sales personnel who had worked the prior fiscal year, except Farne. Carriage claimed that Farne was not entitled to a bonus because a condition precedent to such entitlement is employment with the company on the date that bonuses are disbursed.
 
 II. STANDARD OF REVIEW
 
 4
 This court's review of a motion for summary judgment is de novo. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993). Summary judgment is appropriate when the pleadings, admissions, and affidavits show that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In determining the propriety of summary judgment, this court must review the record and draw all reasonable inferences in the light most favorable to the non-moving party. Sarsha, 3 F.3d at 1038.
 
 III. DISCUSSION
 
 5
 Whether Carriage and Farne entered into an enforceable agreement to pay a bonus is determined by the application of common law contract principles.[3] Under Indiana law, a company's offer to pay a bonus may become enforceable when it induces the employee to accept or continue employment. Dove v. Rose Acre Farms, Inc., 434 N.E.2d 931, 933 (Ind.Ct.App.1982); Orton & Steinbrenner Co. v. Miltonberger, 129 N.E. 47, 48 (Ind.Ct.App.1920); Flynn v. Koppers Company, Inc., 567 F.2d 741, 743 (7th Cir.1977). Despite the employee's acceptance or continuation of employment, however, the offer is not enforceable until the employee has satisfied all the terms of the agreement. Montgomery Ward & Co. v. Guignet, 45 N.E.2d 337, 340 (Ind.Ct.App.1942). In this case, we must determine what the terms of the bonus agreement between Carriage and Farne were.
 
 
 6
 Indiana law holds that, absent a showing that some other arrangement or policy was in place, where an agreement to provide compensation for services is made the employee's entitlement to the compensation becomes vested as a matter of law once the employee has rendered the services as promised. Baesler's Super-Value v. Indiana Commissioner of Labor, 500 N.E.2d 243, 245 (Ind.Ct.App.1986); Tuthill Corp. v. Wolfe, 451 N.E.2d 72, 76 (Ind.Ct.App.1983); Die & Mold, Inc. v. Western, 448 N.E.2d 44, 46-47 (Ind.Ct.App.1983). This is true for all forms of compensation, including deferred compensation, that is promised in lieu of wages. See Baesler's, 500 N.E.2d at 245 (vacation pay); Tuthill, 451 N.E.2d at 76 (profit sharing). Thus, once an employee has performed the services required under an employment agreement, Indiana law establishes a presumption that he is entitled to compensation. The employer may rebut the presumption by showing that a different agreement was in place. Here, Carriage seeks to establish that its policy, requiring employees who had earned a bonus during the prior fiscal year to be employed on the day checks were distributed, was made part of its agreement with Farne.
 
 
 7
 In light of the fact that Indiana views provisions calling for the forfeiture of compensation, despite the employee's performance of services, with disfavor, Colonial Mortgage Co., Inc. v. Windmiller, 376 N.E.2d 529, 540 (Ind.Ct.App.1978), Carriage faces a heavy burden. A forfeiture provision found in a written employment contract will be enforced only where the language is unequivocal. Morton v. E-Z Rake, Inc., 397 N.E.2d 609, 613 (Ind.Ct.App.1979); Colonial, 376 N.E.2d at 540; Flynn, 567 F.2d at 743. Any doubts in construction are resolved in favor of avoiding a forfeiture. Id.; Morton, 397 N.E.2d 613. Where an employment agreement is made orally, a forfeiture provision or policy will be enforced only where it is demonstrated that the policy or provision was known to the employee. Tuthill, 451 N.E.2d at 74 (refusing to enforce a provision that any bonus earned would be forfeited if the employee did not complete a full year with the company because it was not communicated to the employee); compare Dove, 434 N.E.2d at 934 (noting that a provision, under which one absence or tardy would result in a forfeiture of the bonus, was well known to Dove, as was the strict application of it); Montgomery Ward, 45 N.E.2d at 339 (emphasizing that Guignet was fully aware that if he was terminated during the fiscal year he would not receive a bonus). We note that the employer's failure to inform the employee of a forfeiture provision or policy will not prevent the formation of an enforceable agreement, that condition simply will not be included as a term of the agreement. Id. at 71.
 
 
 8
 Reviewing the record in the light most favorable to Farne, we conclude that although an oral bonus agreement was reached between Carriage and Farne, there is a genuine issue of fact as to whether employment on the day checks were distributed was one of its terms. Farne established that an oral contract was formed whereby Carriage offered to pay Farne a bonus, the amount of which would be determined by the company's profits and his performance evaluation, provided he worked throughout the fiscal year. Carriage's bonus policy was explained to Farne during his interview. Farne was told that the receipt of a bonus was contingent on its profits and the employee's performance. While Farne was aware that a bonus was not guaranteed, he was led to believe that when the conditions were met, he would receive one. During the course of his employment with Carriage, Farne earned significant bonuses, as did other employees. Thus, Carriage's implementation of the bonus policy during Farne's tenure was consistent with its explanation. The amount and relative certainty of these bonuses induced Farne to enter into and to remain in Carriage's employ.
 
 
 9
 Farne also established that the conditions giving rise to his entitlement to the bonus were met. Carriage's profits for the 1991-92 fiscal year were $30.7 million. Farne offered evidence that his performance evaluations were positive and had improved over time, as evidenced by the $3,000 bonus he received after his first year and the $6,000 bonus he received after the second year. Farne's gross sales for the 1991-92 fiscal year were the third highest among all Carriage personnel. When he was discharged, Farne was assured that it was not due to his performance.
 
 
 10
 Without conceding that an agreement to pay a bonus was made, Carriage argues that any such agreement was nevertheless conditioned upon being employed on the day bonus checks were distributed.[4] Farne, of course, disclaims any knowledge of Carriage's policy. He testified in his deposition that he was never informed of nor was he aware that employment on the day bonuses were disbursed was a condition precedent to receipt of the bonus. As the party opposing summary judgment, Farne's deposition testimony constitutes affirmative evidence, even though it contains only bare denials. Sarsha, 3 F.3d at 1041.
 
 
 11
 Carriage, on the other hand, offers no proof that its policy was communicated to Farne or even that it was well publicized. Instead, it offers the affidavits of five employees, including that of Groves, affirming the fact that to their knowledge Carriage had a forfeiture policy. However, none of the affiants claimed that they discussed the policy with Farne or that Farne should have known about the policy. Moreover, each of the employees cited a different individual as his source of information. Carriage also furnished proof that one employee who was terminated in August 1986, did not receive his bonus despite his having remained employed throughout the fiscal year. However, the fact that one employee, who was discharged before Farne was hired, was subjected to a forfeiture policy does not establish that the policy was communicated to Farne.
 
 
 12
 Because, Carriage failed to carry its burden of proving that the forfeiture policy was a term of its bonus agreement with Farne, his deposition testimony was sufficient to raise a genuine issue of fact. Thus, the district court's grant of summary judgment was improper.
 
 
 13
 REVERSE AND REMAND.
 
 
 
 [1]
 Jurisdiction was based on diversity of citizenship. Carriage, a corporation pursuant to the laws of the state of Georgia, has its principal place of business in Georgia and Farne was a citizen of Indiana at the time the suit was filed. He is currently a citizen of the state of North Carolina. Although Farne claimed only the unpaid $20,000 bonus, he also demanded double that amount in penalties. Thus, the amount in controversy was satisfied. 28 U.S.C. Sec. 1332(a)
 
 
 [2]
 The parties agree that Farne was discharged for informing two fellow employees that they were being investigated for sexual harassment and for lying about the disclosure
 
 
 [3]
 In addition to ordinary contract remedies, Indiana law provides for penalties for failure to pay wages within statutorily defined time limits. The relevant statutory provisions are as follows:
 Every [employer] shall pay each employee thereof at least semi-monthly or bi-weekly, if requested, the amount due such employee.... Such payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of such payment.
 Ind.Code Sec. 22-2-5-1 (1988).
 Every [employer] who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any suit to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.
 Ind.Code Sec. 22-2-5-2 (1988).
 Farne's complaint read that "[b]y failing and refusing to pay plaintiff the [bonus] ... pursuant to such program of compensation ... defendant is liable for the base sum of no less than $20,000 as well as double damages and attorneys fees pursuant to I.C. 22-2-5-2." Although he demanded penalties, Farne also properly alleged a breach of contract claim.
 
 
 [4]
 It should be noted that Carriage does not argue that Farne was denied the bonus on the ground that the company was not profitable, nor on the ground that his performance was inadequate