James T. CAMPBELL, Plaintiff–Appellant,

v.

ELI LILLY AND COMPANY, Defendant–Appellee.

No. 2–580A151.

Court of Appeals of Indiana, First District.

Dec. 30, 1980.

Robert C. Bruner, Michael C. Frische, Indianapolis, Alan B. Morrison, Washington, D.C., for plaintiff–appellant.

Charles L. Whistler, John W. Purcell, Baker & Daniels, Indianapolis, for defendant–appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

James T. Campbell appeals the granting of summary judgment against him in his action against Eli Lilly & Company (Lilly), in which he sought damages and reinstatement based upon his discharge by Lilly.[1]

We affirm.

## STATEMENT OF THE FACTS

The facts most favorable to Campbell, as the non–moving party, reveal the following. Campbell was employed by Lilly, a pharmaceutical manufacturer, as an antibiotic operator in 1953. He became a technical associate in the research section in 1967, which position he maintained until the employment relationship terminated in 1978.

---

1. We note at the outset that Campbell, in preparing his appeal, ignored the clear mandate of Ind. Rules of Procedure, Appellate Rule 8.3(A)(4) by failing to include in his statement of the case a brief indication of the nature of the case and a verbatim statement of the judgment. Campbell additionally failed to include a summary of argument, as required by A.R. 8.3(A)(6). Although this is careless appellate practice, the inadequacies are not so substantial as to require summary affirmance of the trial court's judgment, and we shall consider this appeal on the merits.

From April, 1973, through the remainder of his employment, Campbell worked, at different times, as a technical associate for three separate research teams conducting research on various drugs. Campbell had no written contract of employment with Lilly, and there was no agreement as to a definite term of employment.

On December 2, 1977, Campbell's attorney, Carl Peters, met with Lilly's staff counsel. Peters related in substance that Campbell had knowledge of various acts of misconduct on the part of the superiors under whom he was assigned during the 1973–1978 period. Campbell further questioned the safety of some of the drugs and made other accusations. At the close of the meeting it was determined that Lilly would investigate Campbell's allegations. Campbell was placed on a paid leave of absence pending completion of the investigation.

The investigation was completed by January 9, 1978, on which date a meeting of Campbell, Peters, and Lilly officials was held. At this meeting, Campbell reiterated his allegations of misconduct and contended that his research work saved Lilly some $500,000,000 in future claims against the company. Lilly reported the findings of its investigation and concluded that Campbell's accusations were totally false. Campbell was placed on an unpaid leave of absence.

Campbell was subsequently informed that there was no job for him at Lilly and on March 21, 1978, he advised Lilly that he had quit. Campbell was fully paid for the work he had done and received all company benefits that had accrued to him, including pension.

## ISSUES

Campbell presents six issues for review essentially as follows:

I. Whether the trial court abused its discretion by allowing Lilly 122 days in which to file a responsive pleading;

II. Whether the trial court erred in limiting discovery;

III. Whether the trial court was impermissibly biased and prejudiced;

IV. Whether the cumulative effect of the alleged errors asserted in Issues I–III denied Campbell his rights to fair proceedings;

V. Whether a cognizable claim is stated by a former at will employee who claims he was discharged in retaliation for having reported to company officials serious allegations of misconduct on the part of his superiors.

VI. Whether the trial court erred in allegedly determining an issue of material fact regarding the existence of a covenant of employment.

## DISCUSSION AND DECISION

### Standard of Review

The principles we apply in reviewing a summary judgment are familiar. Ind. Rules of Procedure, Trial Rule 56(C) states in part that:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Our task on review, therefore, is to determine whether there is any genuine issue of material fact and whether the law was correctly applied. *Smith v. P. & B. Corporation,* (1979) Ind.App., 386 N.E.2d 1232. In so determining the existence of a genuine issue of material fact, we accept as true all facts set forth by the party opposing the motion and resolve all doubts against the party who moved for summary judgment. *Johnson v. Motors Dispatch, Inc.,* (1977) Ind. App., 360 N.E.2d 224; *St. Joseph Bank & Trust Company of South Bend v. The Wackenhut Corporation,* (1976) Ind.App., 352 N.E.2d 842.

### Issue I. Granting enlargement of time

Campbell contends the trial court abused its discretion by allowing Lilly some 122 days to file its responsive pleading to his complaint. Campbell claims that the effect of the enlargements allowed Lilly

was to "unduly delay the cause and frustrate the appellant's reasonable efforts to secure a just determination of his action."

Lilly contends that it received automatic enlargement of time in which to respond under Local Rule 5(H) of the Marion Circuit and Superior Courts. Prior to the expiration of the enlarged period, Campbell filed an amended complaint adding a new cause of action. Lilly then filed a motion for enlargement of time in response to the filing of the amended complaint. Lilly sought one further enlargement to accommodate the filing and signing of Campbell's deposition.

Ind. Rules of Procedure, Trial Rule 6 provides the trial court with discretion to permit enlargements of time for pleadings. Only an abuse of that discretion will allow this court to reverse the decision in Campbell's favor. *Snyder v. Tell City Clinic*, (1979) Ind.App., 391 N.E.2d 623. The record shows that a good portion of the delay was occasioned by Campbell's filing the amended complaint and his reluctance to sign his own deposition. Further delay was attributed to the reporter who transcribed the deposition. Campbell has failed to demonstrate any prejudice whatever. There was no abuse of discretion.

*Issue II. Discovery*

Campbell argues that the trial court abused its discretion in limiting discovery. In particular, Campbell complains that the trial court failed to compel Lilly to answer certain interrogatories. Additionally, Campbell asserts that the trial court failed to enter a ruling on Lilly's motion to limit discovery. Campbell urges that the trial court's action prevented him from pursuing his case in an "orderly, full fashion," and that the trial court, in ruling on Lilly's motion for summary judgment before discovery had been completed, acted contrary to the policy underlying summary judgment.

■ In ruling on issues of discovery, the trial court exercises its judicial discretion; this court will interfere only if the trial court has abused its discretion. *Geib v. Estate of Geib*, (1979) Ind.App., 395 N.E.2d 336.

■ In the case at bar, Lilly successfully sought to limit discovery, temporarily, to matters relevant to the issues raised by its motion for summary judgment.

At a pretrial conference, the trial court directed the parties to limit discovery, temporarily, to matters relevant to the disposition of Lilly's motion for summary judgment. This consisted of restricting Campbell's discovery to the deposition of the two Lilly employees, Dr. Tuttle and Mr. Taylor, who were identified by Campbell as having knowledge of issues relevant to the motion. Indeed, Campbell failed to depose these witnesses prior to the hearing on the summary judgment motion, and declined to take advantage of the court's reasonable offer to delay hearing on the motion until Campbell took those depositions. Campbell does not set forth in his brief with any specificity whatever the nature of the interrogatories he sought to be answered by Lilly. Lilly characterizes these interrogatories as lengthy and convoluted and relating matters not relevant to the summary judgment motion.

We find no abuse of discretion. Lilly directs us to the case of *Newton v. Yates*, (1976) Ind.App., 353 N.E.2d 485, wherein this court affirmed the delaying of discovery relating to punitive damages, pending determination of other issues, stating:

"The 'principle of judicial parsimony' allows a court to delay or suspend discovery on one issue if the outcome of another issue, to be tried first, will be dispositive of the entire case." (Citations omitted.)

353 N.E.2d at 491.

This principle was followed, and prudently so, in the case at bar.

*Issue III. Trial court bias*

■ In this issue, Campbell claims that he was denied his due process right to a fair proceeding and that the trial judge demonstrated bias, prejudice, and hostility to Campbell. In his brief, he points to several examples of alleged bias on the part of the trial court consisting of statements made by

the trial judge at the summary judgment hearing.

We have carefully examined the specific references cited by Campbell. Regarding the court's expressions of alleged antipathy toward the Food and Drug Administration, and the federal bureaucracy in general, we see nothing indicating an unfair predisposition on the part of the judge to Campbell's case. Campbell claims the trial judge erroneously rejected relevant evidence at the hearing. Campbell made no objection; indeed, his counsel stated that he understood the trial court's reasoning. Campbell points to the judge's remark in reference to the personnel manual that, "I am not about to read Lilly's gingerbread book. It doesn't apply to this particular case." While this characterization of the manual is interesting, nevertheless the determination of its inapplicability to the case is correct. See discussion of Issue VI, *infra*. Campbell notes that the judge characterized Counts I, II, and III of the complaint as "hogwash." We disagree that this expression tends to show prejudice. It is a familiar and colloquial manner of saying that the judge found those counts of the complaint as being without merit, and ultimately ruled accordingly.

Finally, Campbell alludes to other remarks contended to reflect bias, prejudice and hostility. We feel that expressions of personal opinion are better left unsaid, but note that this was a hearing on a pretrial motion and, of course, no jury was present or had even been assembled. In the context of the proceedings, the remarks consisted of the judge's musings about issues irrelevant to the trial. It is axiomatic that for alleged prejudice and hostility to be reversible, some harm must be shown. Inasmuch as we affirm the trial court's application of the law to this case, and since no factual dispute needed to be resolved by the court that could possibly have been tainted by prejudice, we fail to see any harm demonstrated.

## Issue IV. Cumulative error

Campbell contends that the cumulative effect of the alleged irregularities in Issues I–III denied him a fair or meaningful hearing on his complaint. Since we found no error to have been shown in those issues it follows, *a fortiori*, that no error is shown here.

## Issue V. Retaliatory discharge

This is the heart of the appeal. Campbell claims the trial court erred in determining that in complaining to Lilly officials about its products and personnel, he was not exercising a right conferred upon him by a statute or protected by statute. The trial court found that his claim of retaliatory discharge does not state a valid claim which qualifies as an exception to the employment at will doctrine recognized by the Supreme Court of Indiana. The court further found that there is no recognized public policy restricting the right of an employer to discharge an at will employee who charges the employer with practices allegedly contrary to the federal drug regulatory scheme and the regulations issued thereunder. Absent the existence of a statutorily conferred right, and Campbell's alleged exercise of that right, the court concluded, Campbell, in alleging that Lilly's termination of his employment violated general public policy, failed to state a claim upon which relief can be granted.

Campbell's position may be summarized in the following way: The principal responsibility is imposed upon the manufacturer to develop the data upon which the United States Food and Drug Administration (FDA) reviews, analyzes, classifies and finally determines the suitability for sale of a particular drug. The sale of drugs which have not attained approval by the FDA may be a basis for criminal prosecution. The scheme requires the full cooperation of the manufacturer in reporting all relevant data, particularly that which may identify adverse reactions occasioned by the administration of the drug. Given that the responsibility is placed upon the manufacturer to so report, it follows that the responsibility is ultimately borne by the employees of the manufacturer. If an employee reports misconduct of his superiors which al-

legedly impairs the integrity of that data, important public policy would be frustrated if the employee is discharged in retaliation for so reporting, presuming the deterrent effect such discharge would have upon other employees in carrying out their responsibilities.

Resolution of this issue requires an examination of the traditional at will employment doctrine and an exception to that doctrine recently recognized in Indiana. It was early stated:

> "The rule seems to be well settled, by the great weight of authority, that where, by the terms of a contract, whether it be written or verbal, where the contract is one for employment, and by its terms, the tenure of service cannot be determined, such contract is one at will, and may be terminated at any time, at the election of either party."

*Speeder Cycle Company v. Teeter*, (1897) 18 Ind.App. 474, 477, 48 N.E. 595.

The rule has been confirmed in Indiana over the years. *See Martin v. Platt*, (1979) Ind.App., 386 N.E.2d 1026; *Shaw v. S. S. Kresge Company*, (1975) 167 Ind.App. 1, 328 N.E.2d 775; *Montgomery Ward & Co. v. Guignet*, (1942) 112 Ind.App. 661, 45 N.E.2d 337; *Accord Davis v. Davis*, (1926) 197 Ind. 386, 151 N.E. 134. *See also Pearson v. Youngstown Sheet and Tube Company*, (7th Cir. 1964) 332 F.2d 439, *cert. denied* 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 185 (applying Indiana law).

The employment at will doctrine has generally been followed, subject to contractual and statutory limitations, throughout the jurisdictions. 9 S. Williston, Contracts § 1017 (3d ed. 1967); Restatement (Second) of Agency § 442 (1958); 56 C.J.S. Master and Servant § 31; 53 Am.Jur.2d Master and Servant § 43; Annotation: Employee's Arbitrary Dismissal as Breach of Employment Contract Terminable at Will, 62 A.L.R.3d 271. "Although the employment at will rule has been almost uniformly criticised ... it has been widely followed." *Fortune v. National Cash Register Company*, (1977) 373 Mass. 96, 364 N.E.2d 1251, 1255. In-

deed, there is no paucity of commentary critical of the rule. *See, e. g.*, Blades, Employment at Will vs. Individual Freedom: on Limiting the Abusive Exercise of Employer Power, 67 Colum.L.Rev. 1404 (1967).

Our Supreme Court most recently considered the employment at will doctrine in *Frampton v. Central Indiana Gas Company*, (1973) 260 Ind. 249, 297 N.E.2d 425. The issue in that case was whether a cognizable claim was stated by a former at will employee who alleged she was discharged in retaliation for having submitted a workmen's compensation claim against her former employer. The court held that a cause of action would lie, thereby recognizing an exception to the traditional at will employment rule.

In reaching its decision, the court examined the Indiana workmen's compensation legislation and found that it was designed to effectuate public policy by bestowing upon an employee the *right* to receive compensation for certain employment–related injuries, and imposing upon the employer the concomitant *duty* to compensate, through insurance, the injured employee. The public policy underlying the scheme was to shift the economic burden for employment–related injuries from the employee to the employer. The court recognized that, as a practical matter, injured employees might be reluctant to file deserving claims if such action would jeopardize their continued employment, and noted that the statute [2] states:

> " 'No contract or agreement, written or implied, no rule, regulation or *other device* shall, in any manner, operate to relieve any employer in whole or in part of any obligation created by this act.' (our emphasis)"

260 Ind. at 252, 297 N.E.2d at 428. The court found the threat of discharge to be a "device" under the statute, and hence in clear contravention of public policy.

In conclusion, the court stated:

---

**2.** Ind. Code 22–3–2–15.

"We agree with the Court of Appeals that, under ordinary circumstances, an employee at will may be discharged without cause. However, when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized."

260 Ind. at 253, 297 N.E.2d at 429.

The case of *Martin, supra,* is particularly apposite here. In that case, two former at will employees alleged they were discharged in retaliation for having reported to a company official that their immediate superior had solicited and received illegal "kickbacks" from company suppliers. The Third District of this court refused to recognize a cause of action where the alleged reason for the discharge is contrary to general public policy, stating: "Normally, of course, the determination of what constitutes public policy, or which of competing public policies should be given precedence, is a function of the legislature." 386 N.E.2d at 1028.

Campbell further contends that he was under a duty to communicate to his superiors the allegedly hazardous nature of certain of Lilly's products. We recognize, as did the court in *Martin,* that several courts have recognized a cause of action for a former at will employee who alleged his discharge was in retaliation for his having fulfilled a statutorily imposed duty. *See e. g. Nees v. Hocks,* (1975) 272 Or. 210, 536 P.2d 512 (statutory obligation to perform jury service); *Petermann v. International Brotherhood of Teamsters,* (1959) 174 Cal. App.2d 184, 344 P.2d 25 (refusal to commit perjury).

We conclude from *Frampton* that in order to fall within a recognized exception to the employment at will rule, a plaintiff must demonstrate that he was discharged in retaliation for either having exercised a statutorily conferred personal right or having fulfilled a statutorily imposed duty in order to state a claim upon which relief may be granted. We have examined closely the materials submitted by the parties, and the authorities cited therein, and fail to discern that Campbell

has stated such a claim under any resolution of the facts. He has nowhere demonstrated a statutory source for the alleged right he claims to have exercised, nor has he demonstrated a statutory source for the duty he claims to have fulfilled. We do not recognize the general public policy exception urged by Campbell to the venerable at will employment doctrine we reconfirm today.

The rationale for our result was stated in *Percival v. General Motors Corporation,* (8th Cir. 1976) 539 F.2d 1126. There, a complaint was dismissed which alleged an employee was discharged,

"... as a result of a conspiracy among his fellow executives to force him out of his employment because of his age and because he had legitimately complained about certain allegedly deceptive practices of General Motors, had refused to give the government false information although urged to do [so] by colleagues and superiors, and had, on the contrary, undertaken to correct certain alleged misrepresentations made to the government by the defendant."

539 F.2d at 1128. The federal court refused to predict that Michigan law would recognize the new theory that a discharge is actionable if it is motivated by the fact that the employee did something that public policy encourages or that he refused to do something that public policy forbids. This being, essentially, the position taken by Campbell, we think the following comment by the *Percival* court is appropriate:

"It may be conceded to plaintiff that there are strong public policy arguments that can be made in support of the theory which he invokes; there are also strong policy arguments that can be made against it. It should be kept in mind that as far as an employment relationship is concerned, an employer as well as an employee has rights; and it should also be kept in mind that a large corporate employer such as General Motors, except to the extent limited by statute or contractual obligations, must be accorded

wide latitude in determining whom it will employ and retain in employment...."
539 F.2d at 1130.

There was no error in the trial court's judgment.

*Issue VI. Question of fact*

In his final issue, Campbell claims that the trial court erred in granting summary judgment for Lilly, contending that a genuine issue exists as to his allegation that Lilly:

"... violated a covenant of the conditions of appellant's employment that it would not terminate that employment for reporting, attempting to report or discuss negligent acts and practices of the appellee when such acts could and would have presented a substantial risk of danger to the health and safety of the public, such covenant being founded upon considerations of public policy and the manifest representations of the appellee."

Campbell claims that the trial court improperly determined the non–existence of the covenant, an alleged question of fact. In his brief, Campbell grounds the presence of this alleged covenant upon three footings.

■ Campbell states the proposition that the alleged covenant is founded upon public policy but has cited no authority in contract law supporting that assertion. We have considered, and rejected, Campbell's theory that a general public policy exception to the at will employment rule exists to support his cause of action for retaliatory discharge sounding in tort, and we find no similar public policy to support his contention that such implies a covenant in his employment agreement.

■ Campbell claims he was denied procedural due process. Although he has waived consideration of this contention by raising it for the first time on appeal (A.P. 8.3(A)(7)) we nonetheless note that the argument is without merit. He has not demonstrated the existence of a property interest protected by state law under statute, ordinance, or contract, as is required. *McQueeney v. Glenn*, (1980) Ind.App., 400 N.E.2d 806.

Finally, Campbell claims that the trial court erred in granting summary judgment for Lilly because the provisions of the personnel manual which were submitted to the court created a genuine issue of material fact as to the existence of the alleged covenant.

In *Shaw, supra*, the plaintiff, an at will employee, contended that an employee's handbook issued by his employer, Kresge, set out the conditions of employment which both parties agreed to follow, and as such constituted a part of the contract of employment. The plaintiff alleged that his discharge was not effected in accordance with the disciplinary procedure outlined in the handbook, and as such constituted a breach of his employment contract. Kresge's motion for summary judgment was sustained. The following statement by Judge Hoffman is appropriate to the case at bar:

"Even assuming, *arguendo*, that the handbook relied upon by appellant constituted a part of the contract, in the absence of a promise on the part of the employer that the employment should continue for a period of time that is either definite or capable of determination, the employment relationship is terminable at the will of the employer. See: *Pearson v. Youngstown Sheet and Tube Co.* (7th Cir. 1974), 332 F.2d 439. There being no binding promise on the part of the employee that he would continue in the employment, it must also be regarded as terminable at his discretion as well. For want of mutuality of obligation or consideration, such a contract would be unenforcible [sic] in respect of that which remains executory. See: 1A Corbin, Contracts, § 152 (1963). See also: 1 Corbin, Contracts, § 96 (1963); 3A Corbin, Contracts, § 683 (1960)."

167 Ind.App. at 7, 328 N.E.2d at 781.

■ Thus, the covenant alleged to have existed by Campbell would be unenforceable even if found to exist. Campbell's attempt to distinguish *Shaw* on its

facts is unavailing. Here, the trial court in essence determined that the question of the covenant's existence was not a material issue of fact. An issue of fact is material for purposes of a motion for summary judgment if it bears on the ultimate resolution of relevant issues. *Stuteville v. Downing*, (1979) Ind.App., 391 N.E.2d 629. Relevant here, assuming the truth of Campbell's allegation that the covenant exists, as we must, is the issue of its enforceability. The trial court did not err in determining that the covenant was unenforceable as a matter of law.

The trial court did not err in granting Lilly's motion for summary judgment in this cause.

Affirmed.

YOUNG, P. J. (participating by designation), concurs.

RATLIFF, J., concurs in part, dissents in part, and concurs in result with opinion.

RATLIFF, Judge, concurring in part, dissenting in part, and concurring in result.

Of the six issues presented in this appeal, I concur in the majority's resolution of Issues I, II, III, IV, and VI. I find myself in disagreement with the majority opinion on Issue V, that of retaliatory discharge, the issue which the majority says is the heart of the appeal. For reasons hereinafter stated, I believe the "public policy exception" to the common law employment at will doctrine is available, in a proper case, to protect the employee who finds himself the victim of retaliatory discharge for activities which have been referred to in some cases and by some writers as "whistle blowing." The exception would grant a right of action for damages to the responsible whistle blower so discharged.

It is true Indiana has followed the traditional common law rule that an employment for an indefinite term not protected either by statute or collective bargaining agreement is terminable at the will of either employer or employee. *Martin v. Platt*, (1979) Ind.App., 386 N.E.2d 1026; *Shaw v. S. S. Kresge Co.*, (1975) 167 Ind.

App. 1, 328 N.E.2d 775, *trans. den.* Indeed, such is the rule not only in Indiana but also is the general rule. *Pierce v. Ortho Pharmaceutical Corp.*, (1980) 84 N.J. 58, 417 A.2d 505; *Tameny v. Atlantic Richfield Co.*, (1980) 164 Cal.Rptr. 839, 610 P.2d 1330; *Harless v. First Nat. Bank in Fairmont*, (W.Va.1978) 246 S.E.2d 270; *Percival v. General Motors Corp.*, (8th Cir. 1976) 539 F.2d 1126.

Application of the common law majority rule permits the discharge of an at will employee at any time, with or without reason, and even when done maliciously. Recognition of the harsh results oft–times produced by rigid adherence to the traditional common law employment at will doctrine has given birth to an emerging doctrine generally designated as the "public policy exception" to the rule. Courts and writers have noted that the common law rule has its roots in nineteenth century legal formalism and laissez–faire labor policies which are not always valid in modern society. *Pierce v. Ortho Pharmaceutical Corp., supra*; Note: *Protecting at Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith*, 93 Harv.L. Rev. 1816, 1824–28 (1980); Comment: *Protecting the Private Sector at Will Employee Who "Blows the Whistle": A Cause of Action Based Upon Determinants of Public Policy*, 1977 Wis.L.Rev. 777, 782–83 (1977). Thus, courts have begun to place limitations upon the free and unfettered common law right of an employer to terminate at will an employee where that termination runs counter to some compelling public policy. As stated by the Supreme Court of West Virginia in *Harless, supra* :

> "However, the general rule does not dispose of the issue in this case. There is a growing trend that recognizes that an employer may subject himself to liability if he fires an employee who is employed at will if the employee can show the firing was motivated by an intention to contravene some substantial public policy."

246 S.E.2d at 273.

The New Jersey Supreme Court in *Pierce, supra*, said:

"Commentators have questioned the compatibility of the traditional at will doctrine with the realities of modern economics and employment practices. [Citations omitted] ... [M]any states have recognized the need to protect employees who are not parties to a collective bargaining agreement or other contract from abusive practices by the employer.

"Recently those states have recognized a common law cause of action for employees at will who were discharged for reasons that were in some way 'wrongful'.... Nearly all jurisdictions link the success of the wrongful[ly] discharged employee's action to proof that the discharge violated public policy." (Our insertion.)

417 A.2d at 509.

In *Tameny, supra,* the California Supreme Court stated:

"Over the past several decades, however, judicial authorities in California and throughout the United States have established the rule that under both common law and the statute [Labor Code 2922] an employee does not enjoy an absolute or totally unfettered right to discharge even an· at–will employee. In a series of cases arising out of a variety of factual settings in which a discharge clearly violated an express statutory objective or undermined a firmly established principle of public policy, courts have recognized that an employer's traditional broad authority to discharge an at–will employee 'may be limited by statute ... or by considerations of public policy.' [Citations omitted.]" (Our insertion.)

610 P.2d at 1332–33.

The "public policy exception" has been created in recent years by a few courts to afford some means of protection to an at will employee whose discharge seriously undermines some compelling public policy.[1] The method of protection has been to grant a cause of action for damages to the wronged employee.[2]

The Indiana Supreme Court has recognized the "public policy exception" in the landmark case of *Frampton v. Central Indiana Gas Co.,* (1973) 260 Ind. 249, 297 N.E.2d 425. In that case, Frampton, an at will employee, contended she was discharged in retaliation because she exercised her statutory right to pursue a workmen's compensation claim against her employer. The employer defended on the basis of the traditional common law employment at will doctrine asserting its absolute right to discharge Frampton even in retaliation, although not admitting such questionable conduct. Justice Hunter, speaking for our Supreme Court, wrote:

"In summary, we hold that an employee who alleges he or she was retaliatorily discharged for filing a claim pursuant to the Indiana Workmen's Compensation Act ... has stated a claim upon which relief can be granted. We further hold that such a discharge would constitute an intentional, wrongful act on the part of the employer for which the injured employee is entitled to be fully compensated in damages. Of course, the issue of retaliation should be a question for the trier of fact." 260 Ind. at 253, 297 N.E.2d at 429.

In *Frampton,* the court agreed that under ordinary circumstances, an employee at will may be discharged without cause. "However, when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized." 260 Ind. at 253, 297 N.E.2d at 429.

The Michigan Supreme Court has likewise recognized an exception to the common law rule granting a right of action against the employer to an at will employee discharged in retaliation for filing a workmen's compensation claim. *Sventko v. Kroger Co.,* (1976) · 69 Mich.App. 644, 245 N.W.2d 151. A similar holding is found in *Kelsay v. Motorola, Inc.,* (1978) 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353.

1. *See* Comment: 1977 Wis.L.Rev. 777 at 786–99 for an excellent treatment of the development of the "public policy exception" and defining the parameters of the exception.

2. Note: 93 Harv.L.Rev. 1816 at 1822. The "public policy exception" is discussed at 1822–24 of this note.

Courts in other jurisdictions have extended the "public policy exception" to situations other than those in which an employee at will was terminated in retaliation for exercising a statutorily guaranteed personal right of the employee. Thus, in *Petermann v. International Brotherhood of Teamsters,* (1959) 174 Cal.App.2d 184, 344 P.2d 25, an employee discharged for refusal to give false testimony to a legislative committee was granted a right of action against his employer. The *Petermann* court reasoned that a directive to commit perjury, a criminal offense, contravened public policy; therefore, discharging the employee for his refusal to commit perjury was "obnoxious to the interests of the state and contrary to public policy and sound morality." 344 P.2d at 27. *Reuther v. Fowler & Williams, Inc.,* (1978) 255 Pa.Super. 28, 386 A.2d 119, recognized the existence of a cause of action for damages when an employee is discharged for having served jury duty. *Nees v. Hocks,* (1975) 272 Or. 210, 536 P.2d 512, is another case involving retaliatory dismissal for jury service. *Monge v. Beebe Rubber Co.,* (1974) 114 N.H. 130, 316 A.2d 549, applied the "public policy exception" to a claim by a female employee of retaliatory dismissal for refusal to go out with her foreman. *Tameny v. Atlantic Richfield Co., supra,* held that an employee who allegedly was fired because of his refusal to participate in an illegal gasoline price fixing scheme could maintain a tort action for damages against his former employer. *Harless v. First Nat. Bank in Fairmont, supra,* upheld a bank employee's right to maintain an action for damages based upon alleged discharge in retaliation for bringing to the attention of his superiors alleged violations of consumer credit legislation and seeking to promote compliance with such laws.

These cases, and others, demonstrate three categories into which "public policy exception" cases fall: (1) where "a particular statute exists which gives a right to the discharged employee but not a corresponding personal remedy"; (2) where "a statute defines a public policy which the employer has breached, but . . . fails to express either a right or a remedy for the discharged employee"; and (3) where there is no statutory public policy, but a judicially declared public policy exists. 1977 Wis.L.Rev. 777, 787–88. In this third situation, the court is faced with the task of defining the policy and fashioning the remedy. *Id.* at 788.

The case before us in this appeal appears to be within the second category, that is, a statutorily defined public policy, not for the special benefit of the employee, but for the benefit of the general public. Congress has enacted the Food, Drug, and Cosmetic Act (21 U.S.C. 301 *et seq.*) and created the Food and Drug Administration (FDA) to regulate the drug industry in the United States. The FDA in turn has promulgated specific regulations to carry out the act. The purpose of such legislation and regulations is to ensure that all drugs and medications made available to the general public are reasonably safe. Here, Campbell contends his discharge was retaliatory because he reported to his superiors what he believed to be serious violations of the federally mandated regulatory scheme pertaining to drugs. Campbell asserts the declared public policy of the United States Congress pertaining to the drug industry required him to report such violations, and that Lilly's action in discharging him, although his employment was at will, contravenes that clear public policy. Thus, Campbell reasons he is squarely within the "public policy exception." He further describes himself as a "whistle–blower" and argues that public policy and the general welfare demand the extension of some measure of protection to the so–called whistle–blower who, responding to his public duty arising out of that public policy, reports violations only to find himself out of a job. It is this precise predicament which is the subject of the Comment in 1977 Wis.L.Rev. 777. This Comment urges extension of the "public policy exception" to the responsible whistle–blower.[3] Indeed, the *Harless* case spe-

---

3. *See* 1977 Wis.L.Rev. at 778, fn. 10 relative to differentiation between a "responsible" whis-

tle–blower and an "irresponsible" one. An "irresponsible" whistle–blower is one who seeks

cifically deals with the case of the whistle-blower. In *Harless* the court stated that the West Virginia Consumer Credit and Protection Act represented a comprehensive effort by the legislature to protect consumers and persons obtaining credit. The Court went on to say:

> "We have no hesitation in stating that the Legislature intended to establish a clear and unequivocal public policy that consumers of credit covered by the Act were to be given protection. Such manifest public policy should not be frustrated by a holding that an employee of a lending institution covered by the Act, who seeks to ensure that compliance is being made with the Act, can be discharged without being furnished a cause of action for such discharge." 246 S.W.2d at 276.

In *Pierce v. Ortho Pharmaceutical Corp.*, *supra*, the New Jersey Supreme Court held that an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy. *Pierce* further states that the wrongfully discharged employee may maintain a cause of action in contract or tort or both.[4] The New Jersey court, however, found that Dr. Pierce was not discharged for reasons violative of public policy, but rather because of her own personal opinions which differed from those of her employer.

In *Martin v. Platt, supra*, the Third District of this court rejected the contention that the "public policy exception" applied to employees allegedly discharged for reporting to a superior that their immediate superior was soliciting and receiving "kickbacks." The opinion in *Martin* restricted application of the *Frampton* rule to cases where the employee was discharged in retaliation for having exercised a statutorily conferred personal right (*e. g.*, a workmen's compensation claim). The *Martin* court also alluded to cases, such as *Nees* and *Petermann*, where the employee was dis-

charged for complying with a statutory duty, and presumably such reference was with approval. *Martin*, however, declined to declare unlawful the discharge of an employee at will where the reason for the discharge is contrary to general public policy, saying that the adoption of a "public policy exception" rule in such cases should be left to the legislature. In this assessment, I disagree. Courts have the capability to carve out exceptions to common law rules where strict adherence to such rule creates harsh and unjust results. The New Jersey Supreme Court said in *Pierce* at 417 A.2d 511:

> "This Court has long recognized the capacity of the common law to develop and adapt to current needs. [Citations omitted.] The interests of employees, employers, and the public lead to the conclusion that the common law of New Jersey should limit the right of an employer to fire an employee at will." (Our insertion.)

The writer of the Note on 93 Harv.L.Rev. 1816, at 1838 says:

> "Courts possess the legitimate heritage of common law innovation that develops new principles to accommodate changing values, and are therefore an appropriate forum for the creation of job security rights. Because courts have considerable experience with similar employment relations problems, they possess sufficient expertise to resolve wrongful discharge disputes. Thus, courts need not await legislative initiative to effect doctrinal change in the employment at will area. Courts themselves created the at will rule; it is therefore entirely appropriate that they now take the lead in modifying it. . . ." (Footnotes omitted.)

I do not seek to establish by the judicial process a rule permitting only "good faith" discharges of at will employees as is advocated in the 93 Harv.L.Rev. 1816 Note.

---

to embarrass his employer by groundless accusations for his own personal motives.

**4.** In *Tameny*, the California Supreme Court held such action to be in tort. *Harless* also

says the action is in tort. The language from *Frampton*, previously quoted in this opinion seems to sound in tort. The Note in 93 Harv.L. Rev. 1816 at 1843 suggests the tort theory to be preferable.

Nor do I accept the rationale that there is an implied covenant of good faith and fair dealing limiting the right of termination existing in the employment at will relationship as found by the Supreme Judicial Court of Massachusetts in *Fortune v. National Cash Register Co.*, (1977) 373 Mass. 96, 364 N.E.2d 1251. Rather, I would not so strictly limit the *Frampton* rule as did the Third District in *Martin v. Platt, supra.* Instead, I would extend the protection of the "public policy exception" to grant a right of action for damages to any employee at will whose wrongful and retaliatory discharge contravenes clearly established public policy. Further, I would grant such protection in all cases where the firing was obnoxious to such clearly declared or established public policy including all three categories previously mentioned. In my view, if the discharged employee could establish that he was dismissed in retaliation for the exercise of any right or duty granted or required by such strong public policy, he should recover damages.

Extension of the "public policy exception" to protect the so-called "responsible whistle–blower" is especially appropriate. A conscientious employee, albeit an employee at will, who, motivated by a sincere desire to further a clear and compelling public policy, either statutorily or judicially declared, calls to the attention of his employer or appropriate authorities facts revealing actual violations of such policy for the purpose of carrying out that clear public policy should not be subjected to retaliatory discharge without being provided with a remedy. The appropriate remedy, in my view, as supported by the cases and commentary cited herein, is a tort action for damages.[5] Giving such a right of action for damages would serve as a deterrent to retaliatory discharge and would promote the very same strong and compelling public policy which the retaliatory discharge would violate. At the same time, in the case of the "whistle–blower," limiting the right of action to the "responsible whistle–blower"

serves to protect the employer from frivolous action based upon groundless claims motivated by harassment for personal gain or publicity. However, the need to extend such protection to the "responsible whistle–blower" is real. Neither crystal ball nor prophetic power is required in order to discern that if such a whistle–blower may be retaliatorily discharged without recourse, the intimidating effect upon other employees will ensure that the first whistle–blower will also be the last.

Therefore, it seems particularly appropriate in a case involving a matter of such great concern to the general public as the development, manufacture, and distribution of drugs to extend the protection of the "public policy exception" to the at will employee wrongfully discharged contrary to the clear mandate of public policy. The fact that Congress has enacted comprehensive legislation regulating the drug industry and that extensive regulations in furtherance of the legislative regulatory scheme have been promulgated establishes the clear and compelling public policy relating to the industry. Consequently, if Campbell presented sufficient facts to raise a genuine issue of fact on the question of whether or not he acted responsibly in calling to the attention of his superiors actual violations of the drug laws, summary judgment should not have been entered against him. In such case, Campbell should have been permitted to proceed to trial, and if he could sustain his burden of proof that his discharge was retaliatory and in contravention of the clear mandate of public policy, he should prevail in an action for damages. The question thus becomes whether Campbell in fact presented a genuine issue of fact concerning his alleged wrongful discharge.

Summary judgment is an appropriate vehicle for disposing of cases expeditiously where legal issues exist and there are no genuine issues of material fact. *Podgorny v. Great Central Ins. Co.*, (1974) 160 Ind.

**5.** Campbell's demand for reinstatement would not be within the remedy so provided. The action for damages would be the only remedy.

App. 244, 311 N.E.2d 640. "The movant carries the burden of establishing the absence of a factual controversy and the evidentiary matters will be construed in a light most favorable to the nonmoving party." *Lee v. Weston,* (1980) Ind.App., 402 N.E.2d 23, 24. However, while the burden is upon the party moving for summary judgment to establish that there is no genuine issue of material fact, and all doubts are resolved in favor of the non–moving party, nevertheless, the opposing party must set forth specific facts showing the existence of a genuine issue of fact for trial. *Henderlong Lumber Co. v. Zinn,* (1980) Ind.App., 406 N.E.2d 310; *Lee v. Weston, supra; Walters v. Kellam & Foley,* (1977) 172 Ind.App. 205, 360 N.E.2d 199, *trans. den.* Indiana Rules of Procedure, Trial Rule 56(E) provides in part:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. . . ."

Here, Lilly filed a motion for summary judgment supported by an affidavit stating facts establishing that Campbell was an employee at will. The affidavit further stated that charges had been made by Campbell which Lilly investigated and found to be groundless. Campbell's deposition was also submitted as part of the summary judgment hearing. At the hearing, the court permitted additional testimony. Campbell testified at the hearing. The essence of Campbell's testimony was that the allegations of his complaint were true. This, in my opinion, is nothing more than standing on the mere allegations of his pleading, which, under T.R. 56 and *Henderlong Lumber, supra; Lee, supra;* and *Walters, supra,* is insufficient. Further, a review of Campbell's deposition reveals no specific facts sufficient to give rise to any genuine issue of material fact that Camp-

bell was discharged in retaliation for reporting any violations of the Food, Drug, and Cosmetic Act or FDA regulations, or that other Lilly employees engaged in any activity condemned by clear and compelling public policy. Campbell pointed to no specific facts showing any concealment of any testing or data that the drugs to which he refers were hazardous, or to any falsification of any records, or failure to report any test results. In fact, his testimony shows that his tests revealing possible lethal effects of one of the drugs was reported to the FDA and that the drug has never been placed on the market. Also, Campbell's deposition clearly established as a primary interest of his a desire to be rewarded for allegedly saving Lilly vast sums of money which they would have been compelled to pay in judgments had not his test results revealed the potential hazard of a certain drug.[6] Clearly, Campbell has not met the requirements of T.R. 56(E) or of the pronouncements of this court in the *Henderlong Lumber, supra; Lee, supra;* and *Walters, supra;* cases. He has not shown the existence of any genuine issue of fact which would bring him within the protection of the "public policy exception" to the employment at will doctrine as that exception should be extended to the "responsible whistle–blower."

Therefore, although I dissent from the majority view restricting the "public policy exception" to the narrow confines of *Frampton* as interpreted by *Martin v. Platt, supra,* I am compelled to concur in the result reached by the majority. My concurrence, however, is based upon the opinion that Campbell did not show the existence of a genuine issue for trial, thus summary judgment was properly entered against him.

---

6. Campbell contended Lilly had saved five hundred million dollars it would have had to pay in settlement of death claims but for his discover-

ies. He suggested many times that he was due a substantial reward, two hundred million dollars being suggested in his complaint.