John H. McCLANAHAN, Appellant
(Plaintiff Below),

v.

REMINGTON FREIGHT LINES, INC.,
and Richard Barbour, Individually and
as Agent for Remington Freight Lines,
Inc., Appellees (Defendants Below).

No. 2–685–A–184.

Court of Appeals of Indiana,
Second District.

Oct. 30, 1986.

Rehearing Denied Dec. 2, 1986.

Phillip E. Burchett, Margaret Ann Nolan, Bartlett & Robb, Lafayette, for appellant.

Joseph T. Bumbleburg, Jeffrey J. Newell, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for appellees.

SULLIVAN, Judge.

John H. McClanahan (McClanahan) appeals the trial court's denial of his motion for partial summary judgment and the granting of summary judgment in favor of defendants Remington Freight Lines, Inc. (Remington) and Richard Barbour (Barbour).

We affirm in part, reverse in part and remand for further proceedings.

The essential facts are undisputed. McClanahan was hired as a truck driver by Remington in November of 1981. There was no set term of employment. In March of 1982, McClanahan picked up a load in New York which was destined for Minnesota via interstate highway through Illinois. At the time McClanahan picked up the load, federal statute permitted loads of up to 80,000 pounds on interstate highways. However, there was in full force and effect in Illinois a state statute imposing a weight limit lower than that permitted by federal statute. McClanahan's load was below the federal limit but exceeded the Illinois limit. McClanahan refused to take the load through Illinois and his employment with Remington ceased.

McClanahan subsequently applied for and was denied unemployment benefits. He appealed the denial and a hearing was held before an appeals referee of the Indiana Employment Security Board. Remington was represented at the hearing by its safety director, Barbour. Remington asserted that McClanahan's refusal to carry the load constituted a voluntary resignation of his employment pursuant to the terms of its driver's handbook which McClanahan admitted receiving. The appeals referee found that McClanahan was discharged for refusing to commit an illegal act, such discharge was not for just cause despite the rule contained in the driver's handbook, and that therefore McClanahan was entitled to unemployment benefits. Remington did not appeal the decision of the appeals referee. Subsequently, McClanahan brought this action against Remington and Barbour for retaliatory discharge.

McClanahan asserts that there is no genuine issue of material fact. He therefore necessarily argues that the court misapplied the law.

The primary issues presented on appeal are:

(1) Whether McClanahan's allegation that he was discharged for refusing to perform an illegal act states a cause of action under Indiana law;

(2) Whether relitigation of the reasons for McClanahan's discharge is barred under the doctrine of collateral estoppel.

Before addressing these issues, we must first dispose of certain procedural issues presented by Remington and Barbour. Remington and Barbour argue that McClanahan has failed to make his appeal in a timely fashion. We disposed of this contention in denying a Motion to Dismiss the Appeal on January 23, 1986. We determined that McClanahan's motion to correct errors was timely filed.

Remington and Barbour also argue that McClanahan has filed an improper record. They point to certain documents omitted from the record and to the fact that the clerk's certificate at the end of the record is dated prior to the judge's certificate.

Indiana Appellate Rule 7.2(B) states:

"Neither party shall request parts of the record or a transcript of the proceedings which are not needed for the issues to be asserted upon the appeal."

The documents omitted by McClanahan, and supplied by Remington and Barbour in an appendix to their appellee's brief, are not necessary to a resolution of the issues presented on appeal.

 With reference to certification, the portions of the record which are necessary for resolution of the issues before us do not require certification by the judge. The requirement of a judge's certificate, if required at all, seems to be restricted to a certification of the transcript of the evidence. *Kroslack v. Estate of Kroslack* (1986) 3d Dist.Ind.App., 489 N.E.2d 650, *trans. pending; Paxton v. Paxton* (1981) 2d Dist.Ind.App., 420 N.E.2d 1346; *State ex rel. O'Neal v. Cros* (1978) 1st Dist., 177 Ind.App. 68, 378 N.E.2d 10; *See* 4A Indiana Practice, *Appellate Procedure* § 43 at p. 81 (Bagni, Giddings & Stroud 1979 ed.). In any event, it is the clerk's certificate which is indispensable and which authenticates and verifies the entire record of proceedings. 4A Indiana Practice, *Appellate Procedure* § 45 (Bagni, Giddings & Stroud

1979 ed.). Accordingly, the discrepancy in dates between the two certificates is not beneficial to Remington and Barbour.

Thus, Remington and Barbour's allegations regarding the record do not require a dismissal of McClanahan's appeal nor do they prevent us from reaching the substantive issues presented. We move now to those issues, keeping in mind the appropriate standard of review.[1]

I

We first address the question whether McClanahan's allegation that he was discharged for refusing to perform an illegal act states a cause of action. Remington asserts, and McClanahan does not disagree, that McClanahan was an employee at will.

 The general rule in Indiana is that an employee at will may be discharged with or without cause at any time by his employer. *Martin v. Platt* (1979) 3d Dist., 179 Ind.App. 688, 386 N.E.2d 1026. However, the Indiana Supreme Court carved out an exception to the general rule in *Frampton v. Central Indiana Gas Co.* (1973) 260 Ind. 249, 297 N.E.2d 425. Our task is to determine whether the discharge of McClanahan by Remington falls within the *Frampton* exception.

The plaintiff in *Frampton* had injured her arm in the course of her employment. She filed a claim for workmen's compensation and received a settlement. Within a month after receiving her workmen's compensation settlement, the plaintiff's employment was terminated. Her employer gave no reasons for her discharge. The plaintiff brought suit against her employer, alleging that the sole reason for her discharge was her filing of the compensation claim. The Supreme Court determined that the plaintiff had stated a cause of action despite the fact that she was an employee at will:

---

1. In reviewing a grant of summary judgment, we must determine whether the law was correctly applied by the trial court. In making our determination, we will liberally construe all evidence in favor of the non-moving party and

resolve any doubt as to the existence of a genuine issue against the proponent of the summary judgment motion. *Harris v. Kettelhut Const., Inc.* (1984) 2d Dist.Ind.App., 468 N.E.2d 1069.

"[U]nder ordinary circumstances an employee at will may be discharged without cause. However, when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized." *Frampton, supra,* 297 N.E.2d at 428.

■ Remington and Barbour argue that the *Frampton* exception is applicable *only* in cases where the employee has been discharged for exercising a statutorily conferred right and that because McClanahan has not alleged that he was exercising a statutory right, he cannot fall within the *Frampton* exception. We do not agree. If, as *Frampton* clearly holds, an employee cannot be discharged solely for exercising a statutory right, logic and justice compel us to hold that an employee cannot be discharged solely for refusing to breach a statutorily imposed duty. To say that an employee discharged for doing what the law *permitted* is entitled to greater protection than an employee discharged for doing what the law *required* would defy common sense. In fact, the employee discharged for refusing to breach a statutory duty should be entitled to even greater protection than the employee discharged for exercising a statutory right. While the individual choosing not to exercise a statutorily conferred right suffers no consequence, the individual choosing to breach a statutory duty is subject to sanctions imposed by the state.

■ In this case, if McClanahan had taken the overweight load into Illinois he would have been in violation of Illinois law and subject to a fine. Ill.Ann.Stat. Ch. 95½, § 15–101 (Smith-Hurd 1971). Additionally, if his overweight vehicle had caused any damage to the highway or highway structures in Illinois, he could have been held individually liable for the cost of repair. Ill.Ann.Stat. Ch. 95½, § 15–318 (Smith-Hurd Supp.1986). The possibility of these sanctions lends support to our conclusion that the *Frampton* exception applies

to the facts of this case. We therefore hold that by alleging that Remington discharged him solely for refusing to perform an illegal act, McClanahan has stated a cause of action.

We find additional support in this respect in case law subsequent to the *Frampton* decision. In *Campbell v. Eli Lilly & Co.* (1980) 1st Dist.Ind.App., 413 N.E.2d 1054, *trans. denied* (1981) Ind. 421 N.E.2d 1099, the First District of this court determined that the *Frampton* exception applied to employees discharged for fulfilling a statutorily imposed duty as well as to those discharged for exercising a statutorily conferred right. *Id.* at 1061. In *Perry v. Hartz Mountain Corp.* (1982) S.D.Ind., 537 F.Supp. 1387, the plaintiff alleged that he had been discharged for refusing to continue his participation in an anticompetitive conspiracy. The U.S. District Court found that the employee's allegation stated a valid cause of action under *Frampton* and *Campbell. Id.* at 1389.[2]

The authorities which Remington and Barbour cite in support of their narrow reading of *Frampton* are distinguishable. In *Martin v. Platt, supra,* 386 N.E.2d 1026, the plaintiff employees alleged that they had been discharged for reporting that their superior was receiving kick-backs from suppliers. The Third District of this court found that the employees could not bring an action for retaliatory discharge. While the *Martin* plaintiffs' reporting of their supervisor's illegal activities may have been desirable from a public policy standpoint, it was not mandated by statute. In this case, McClanahan's refusal to perform, which he alleges to be the sole reason for his discharge, was required by statute.

Remington and Barbour also cite *Mead Johnson and Co. v. Oppenheimer* (1984) 1st Dist.Ind.App., 458 N.E.2d 668. While the *Mead Johnson* case does provide an excellent description of the general employment at will rule, the case adds nothing to

---

**2.** *See also Wagner v. City of Globe* (1986) Ariz., 722 P.2d 250. ("Most courts agree ... that an employee should not be faced with the dilemma of violating the law or losing his job." *Id.* at 256.); Annot., 9 ALR 4th 329 (1981).

an understanding of the *Frampton* exception to the rule. The issue in *Mead Johnson* was not whether the plaintiff, who was discharged for destroying a pair of work gloves, came within the *Frampton* exception, but rather whether the plaintiff was in fact an employee at will. Remington and Barbour's reliance on *Mead Johnson* is misplaced.

Finally, Remington and Barbour point to the Indiana Supreme Court's recent decision in *Morgan Drive Away, Inc. v. Brant* (1986) Ind., 489 N.E.2d 933, in which the court found that an employee who alleged he had been discharged for filing a small claims action for payment of services could not bring an action for retaliatory discharge against his employer. *Morgan Drive Away* is more difficult to reconcile with our reading of *Frampton* in that the employee's right to payment of wages was statutorily conferred by I.C. 22-2-4-4 (Burns Code Ed.1974). However, we must again note that in the case before us we are concerned with an employee who alleges he was discharged solely for refusing to breach a statutorily imposed duty. While the Supreme Court's decision in *Morgan Drive Away* may indicate that not all statutorily conferred rights are entitled to the protection of the *Frampton* exception, we do not believe that the court meant to hold that an employee discharged for refusing to breach a statutorily imposed duty is to be left without redress. We simply cannot accept an interpretation of the *Morgan Drive Away* decision which would allow an employer to force an employee to choose between breaking the law and losing his job.

We are necessarily troubled by an arguable implication in *Morgan Drive Away* that the *Frampton* exception may be available only in cases involving workmen's compensation claims. The court stated that "[s]ince *Frampton*, ... Indiana courts have refused to recognize retaliatory discharge actions in cases not involving workmen's compensation claims." *Morgan Drive Away, supra,* 489 N.E.2d at 934. After a closer reading of *Morgan Drive Away* and the authorities cited therein, we

can only conclude that the possible implication is not so clear as to be controlling—at least not under the circumstance before us. It is true, as the *Morgan Drive Away* opinion notes, that Indiana courts have refused to recognize retaliatory discharge actions in cases not involving workmen's compensation claims. However, the basis for the courts' refusal has not been the fact that the cases did not involve workmen's compensation claims, but rather that the plaintiffs failed to demonstrate a statutory source for the actions which led to their discharge. *See Hamblen v. Danners, Inc.* (1985) 1st Dist.Ind.App., 478 N.E.2d 926, 929 ("In the absence of statutory directives, we decline to find a violation of public policy in the dismissal of an employee who refuses to take a polygraph examination."); *Rice v. Grant County Bd. of Commissioners* (1984) 2d Dist.Ind.App., 472 N.E.2d 213, 215 ("Although [plaintiff] alleges his conduct was reasonable under the Indiana general traffic statutes ..., the general traffic laws do not confer a right or duty upon [plaintiff] to proceed outside the county line, to drive his truck in the mud, or to incur county expense for towing."); *Hillenbrand v. City of Evansville* (1983) 4th Dist.Ind.App., 457 N.E.2d 236, 237 ("[Plaintiff] simply presented no evidence that he was fired for carrying out his statutorily imposed obligations."); *Campbell v. Eli Lilly & Co., supra,* 413 N.E.2d 1054, 1061 ("[Plaintiff] has nowhere demonstrated a statutory source for the right he claims to have exercised, nor has he demonstrated a statutory source for the duty he claims to have fulfilled."). *See also Moffett v. Gene B. Glick Co., Inc.* (1984) N.D. Ind., 604 F.Supp. 229 (plaintiff alleging discharge for filing a discrimination charge against her employer under the provisions of Title VII of the Civil Rights Act of 1964 held to have stated a valid cause of action); *Pepsi Cola General Bottlers, Inc. v. Woods* (1982) 1st Dist.Ind.App., 440 N.E.2d 696 (finding that exceptions to employee at will rule exist "where the employee is discharged solely for exercising a right con-

ferred on him by statute, constitution, or other positive law." *Id.* at 697).

■ The language in *Frampton* indicates that the court did not intend its holding to be limited to cases involving workmen's compensation claims. "[W]hen an employee is discharged solely for exercising a *statutorily conferred right* an exception to the rule must be recognized." *Frampton, supra,* 297 N.E.2d at 428 (Emphasis supplied). To narrow the application of the *Frampton* exception to only those cases involving workmen's compensation claims would seem contrary to the unambiguous holding of the *Frampton* court.[3] We cannot believe that the Supreme Court intended for *Morgan Drive Away* to have such effect, especially in light of the court's reference in *Morgan Drive Away* to *Frampton* as "a milestone in the march of Indiana common law." *Morgan Drive Away, supra,* 489 N.E.2d at 934. Surely the court did not intend for the march to halt and become a full-fledged retreat.

Our Supreme Court clearly does not wish the Frampton door through the employment at will barrier opened so wide as to allow entry to every discharged and disgruntled employee. *Morgan Drive Away* makes clear that the statutorily conferred right to wages will not give passage through the door, but the decision does not state what, if any, other statutorily conferred rights will be unavailing. Such determinations must be made on a case by case basis, taking into account such factors

as the legislative intent, whether the statute actually confers a right or merely a privilege, and the extent to which exercise of the statutorily conferred right interferes with the employee's performance of those duties which the employer may legally require of him.[4]

■ Remington and Barbour argue that even if McClanahan's allegation states a cause of action, he still must fail because the law he was asked to violate was unconstitutional under the commerce clause. Remington points out that the federal government allowed weight limits of up to 80,000 pounds on interstate highways. Because Illinois was one of only three states which had a weight limit lower than the federal limit, Remington and Barbour argue that Illinois' weight limit statute placed an unconstitutional burden on interstate commerce. Thus, although the Illinois weight limit statute was in full force and had not been declared unconstitutional by any court, Remington's unilateral determination that the statute was unconstitutional presumably permitted Remington to order McClanahan to violate the statute.

The argument is innovative, but without merit. We need not determine whether the Illinois weight limit statute was constitutional for we cannot accept an argument which would allow an employer to determine the constitutionality of a presumptively valid statute and then test its determination by using its employees as guinea pigs. If Remington believed the Illinois weight

---

3. To narrow *Frampton* to cases involving only workmen's compensation claims would prevent an employer from firing an employee for filing a workmen's compensation claim, but allow the employer to fire the employee solely for missing an hour of work to vote, a statutorily conferred right (I.C. 3–5–4–2 (Burns Code Ed.Supp.1986)) of constitutional dimensions. We are unable to see any logical reason for granting the right to workmen's compensation benefits such exalted status.

4. For example, under this analysis an employee fired for fighting would not be able to bring an action for retaliatory discharge by arguing that he was discharged solely for exercising his statutorily conferred right of self-defense under I.C. 35–41–3–2 (Burns Code Ed.Repl.1985). First,

the self-defense statute appears to grant a privilege or a defense rather than a statutory right as contemplated by *Frampton.* Second, fighting on company time and property would clearly interfere with the employee's ability to perform those duties legally required of him by the employer.

We realize that application of this analysis will not always draw such clear lines between statutory rights that are protected under *Frampton* and those that are not. However, to endorse the simplistic approach of granting *Frampton* protection only to workmen's compensation claimants would be to sacrifice rationality for clarity. We choose not to make this sacrifice.

limit statute to be unconstitutional, its proper course was to challenge the statute in court rather than to instruct its drivers to violate the statute and risk personal liability.[5]

## II

McClanahan argues that if his allegation does state a cause of action, litigation of the reason for his discharge is barred under the doctrine of collateral estoppel. McClanahan contends that the issue was fully litigated in the proceeding before the Employment Security Review Board, and therefore the Board's decision that he was discharged for refusing to perform an illegal act is binding on the parties. McClanahan initially raised his collateral estoppel argument in his motion for partial summary judgment.

 Collateral estoppel is a branch of the doctrine of res judicata.[6] The doctrine of collateral estoppel or "issue preclusion" applies when a particular issue is adjudicated and then put in issue in a subsequent suit on a different cause of action between the same parties or their privies. *Cox v. Indiana Subcontractors Assoc., Inc.* (1982) 1st Dist.Ind.App., 441 N.E.2d 222.

Remington and Barbour argue that there is no competent evidence supporting McClanahan's collateral estoppel claim. Remington and Barbour make several arguments regarding the admissibility of a transcript of the proceeding before the appeals referee of the Employment Security Division. Remington and Barbour also argue that the document entitled "Decision of Appeals Referee" is incompetent for lack of certification or authentication.

 The disputed transcript does not contain the decision rendered by the appeals referee and would therefore be insufficient to support McClanahan's collateral estoppel claim regardless whether or not it was admissible. The "Decision of Appeals Referee," on the other hand, contains the elements necessary to support McClanahan's collateral estoppel claim. The document clearly states that Remington and McClanahan were parties to the proceeding and contains the referee's conclusion that McClanahan was discharged for refusing to perform an illegal act. Record at 136. The document, along with the transcript of the proceedings, was attached to McClanahan's motion for partial summary judgment. The document was not certified. An uncertified exhibit attached to a brief or a motion is not properly considered on a motion for summary judgment. *Wallace v. Indiana Insurance Co.* (1981) 1st Dist.Ind.App., 428 N.E.2d 1361. Thus, the trial court could not consider the "Decision of Appeals Referee" and was correct in denying McClanahan's motion for partial summary judgment.[7]

Although we already have determined that the trial court's denial of McClanahan's partial summary judgment motion was correct, we deem it advisable to consider a final issue regarding McClanahan's collateral estoppel claim. Remington and Barbour argue that the decision of an administrative agency such as the Employment Security Review Board may not be given collateral estoppel effect. Because of our certainty that this issue will arise

---

5. We note in passing that the federal law allowing weight limits of up to 80,000 pounds on interstate highways foresaw that not all states would comply with the federal limit by providing that such states would be denied certain federal funds. 23 U.S.C.A. § 127 (West Supp. 1986). While this provision certainly encourages state compliance with the federal limit, it in no way requires state compliance.

6. The other branch of the doctrine of res judicata is "claim preclusion" which bars an action when a court of competent jurisdiction has entered a final judgment on the merits in a prior action between the same parties or their privies

on the same claim. *Rees v. Heyser* (1980) 1st Dist.Ind.App., 404 N.E.2d 1183.

7. McClanahan alleges in his reply brief that the parties stipulated to the authenticity of the decision of the appeals referee in the Pre-Trial Order filed with the trial court on October 24, 1984, thus making certification of the document unnecessary. However, any stipulations which may have been made have not been included in the transcript of the record and we may not consider them. *Indiana & Michigan Electric Co. v. Pounds* (1981) 4th Dist.Ind.App., 428 N.E.2d 108.

upon remand, we address it in order to give some guidance to the trial court.

The issue was addressed by this court in *South Bend Federation of Teachers v. National Education Assoc.* (1979) 2d Dist., 180 Ind.App. 299, 389 N.E.2d 23. We determined that administrative agency decisions should be given collateral estoppel effect when the administrative proceedings are judicial in nature, "unless a convincing reason is advanced why the first proceeding should not be final." *Id.* at 34.

The Employment Security Review Board has been empowered by the legislature to resolve disputes concerning the payment of unemployment benefits. I.C. 22–4–17–1 (Burns Code Supp.1986). After an initial determination of the employee's eligibility for benefits, the parties to such disputes are given an opportunity for a fair hearing before an appeals referee who may affirm, reverse or modify the initial determination. I.C. 22–4–17–3 (Burns Code Ed.1974). A complete record is kept of the proceedings before the appeals referee and the referee has the power to administer oaths, take depositions, and issue subpoenas. I.C. 22–4–17–6, –7 (Burns Code Ed.1974).

▬ These statutory provisions clearly indicate that the proceedings are judicial in nature. The proceedings pit two adversarial parties before a referee expressly granted the authority to perform traditionally judicial functions. Additionally, the decision of the appeals referee is to be final unless the aggrieved party appeals to Review Board within fifteen days after the decision is mailed to the parties. I.C. 22–4–17–3 (Burns Code Ed.1981). To deny an unappealed decision of the appeals referee collateral estoppel effect would undercut the legislature's express intent regarding the finality of such decisions. Therefore, the decision of the appeals referee of the

Employment Security Review Board in this instance is entitled to collateral estoppel effect.[8]

In conclusion, we hold that McClanahan's allegation that he was discharged solely for refusing to perform an illegal act states a cause of action in Indiana under *Frampton.* The trial court was correct in denying McClanahan's motion for partial summary judgment based upon collateral estoppel because the document supporting the collateral estoppel claim was not certified and could not be properly considered. However, decisions of administrative agencies such as the Employment Security Review Board are to be accorded collateral estoppel effect if the proceedings are judicial in nature and no convincing reasons are advanced as to why the proceedings should not be final.

The trial court's summary judgment in favor of Remington and Barbour is reversed. The trial court's denial of McClanahan's motion for partial summary judgment upon the issue of liability is affirmed, and the cause is remanded for further proceedings consistent with this opinion.

SHIELDS, J., concurs.

BUCHANAN, C.J., concurs in part and dissents in part with separate opinion.

BUCHANAN, Chief Judge, concurring and dissenting.

I concur as to Issue Two, but it is my firm opinion that *Morgan Drive Away, Inc. v. Brant* (1986), Ind., 489 N.E.2d 933, militates against the majority position. Justice Dickson speaking for a majority of the Supreme Court uses this unequivocal language:

"*Since Frampton, however, Indiana courts have refused to recognize retaliatory discharge actions in cases not involving workmen's compensation*

---

8. We recognize that there may be instances in which an administrative agency's decision is not entitled to collateral estoppel effect even though the agency's proceeding was quasi-judicial. Administrative agencies are not bound in their proceedings by the same rules of evidence and procedure that bind courts of law. If a showing is made that in reaching its decision, the administrative agency considered evidence which

could not be considered in a court of law or completely failed to observe procedural safeguards, the decision might not be entitled to collateral estoppel effect. Such showings would fall within the category of "convincing reason[s] . . . why the first proceeding should not be final." *South Bend Federation of Teachers, supra,* 389 N.E.2d at 34.

*claims. Martin v. Platt* (1979), 179 Ind. App. 688, 386 N.E.2d 1026, denied an action for retaliatory discharge where terminated employees claimed that their discharge was in retaliation for having reported to a company official that their immediate superior had solicited and received illegal "kickbacks" from company suppliers. *McQueeney v. Glenn* (1980), Ind.App., 400 N.E.2d 806, *cert. denied* (1981), 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112, rejected plaintiff's contention that termination because of her marriage constituted actionable retaliatory discharge. *Campbell v. Eli Lilly and Co.* (1980), Ind.App., 413 N.E.2d 1054, affirmed summary judgment against an employee who claimed that his discharge was in retaliation for charging the employer with practices contrary to the federal drug regulatory scheme and regulations.

[1] The employment at will doctrine has steadfastly been recognized and enforced as the public policy of this State. See, discussion in *Campbell, supra,* 413 N.E.2d at 1060. *Revision or rejection of the doctrine is better left to the legislature.* (Emphasis supplied.)